## Ross *v.* Chester Traction Company, Appellant.

*Negligence—Infant—Personal injuries from fire—Street railway companies.*

In an action against a street railway company to recover damages for death of a little girl seven years old, the case is properly submitted to the jury where there is evidence that an employee of the defendant pushed a wheelbarrow load of waste and greasy material and newspapers onto a lot not owned by the defendant, set fire to the stuff while a high wind was blowing, waited until the mass was reduced to smoking embers, and then left the lot, and that the plaintiff and another little girl approached the embers, and while standing or sitting near them, the wind fanned them into a flame which communicated directly to the child's clothing, or carried a live spark or cinder against the child's clothing, igniting it.

Mr. Justice Elkin dissents.

Argued Feb. 8, 1909. Appeal, No. 175, Jan. T., 1908, by defendant, from judgment of C. P. Delaware Co., June T., 1906, No. 126, on verdict for plaintiffs in case of Charles W. Ross and Maggie M., his wife, v. Chester Traction Company. Before Fell, Brown, Mestrezat, Elkin and Stewart, JJ. Affirmed.

Trespass to recover damages for death of a child. Before Johnson, J. P.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiffs for $1,540.07.    Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*John B. Hannum* for appellant.—The cause of the child's injury was the fact that the child rebuilt the fire into a dangerous condition and thereby fired herself.· To make this thought clear and illustrate it, it is analogous to an adult leaving matches where they can be reached by a child, and such child fires the matches and thereby produces an injury.    Surely there would be no liability in such case.    The agency is changed from a harmless to a harmful condition by the act of the child: Philadelphia & Reading R. R. Co. v. Spearen, 47 Pa. 300; Swanson v. Crandall, 2 Pa. Superior Ct. 85; Hoag v. Railroad Co., 85 Pa. 293; Herr v. Lebanon, 149 Pa. 222; Penna. R. R. Co. v. Kerr, 62 Pa. 353.

A man is not to be held for consequences which he had no direct hand in producing and no reason to expect.    Expectation that any particular thing will occur is produced by the probability that it will occur, not the possibility of its occurrence: Lane v. Atlantic Works, 111 Mass. 136.

*William I. Schaffer* with him *John B. Hannum, Jr.,* for appellees.—The defendant's negligence was proximate, not remote: Haverly v. State Line, etc., R. R. Co., 135 Pa. 50; Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122; Gudfelder v. Pittsburg, etc., Ry. Co., 207 Pa. 629; Marsh v. Giles, 211 Pa. 17; Oil City Gas Co. v. Robinson, 99 Pa. 1; Bunting v. Hogsett, 139 Pa. 363; Bindford v. Johnston, 82 Ind. 426; Rachmel v. Clark, 205 Pa. 314; Duffy v. Sable Iron Works, 210 Pa. 326; Daltry v. Media Electric Light, etc., Co., 208 Pa. 403; Miller v. Lewistown Electric Light, etc., Co., 212 Pa.·593; Walsh v. Railways Co., 221 Pa. 463.

If there are two theories as to how the child caught fire, the case was for the jury: Lehigh Valley R. R. Co. v. McKeen, 90 Pa. 122.

"If the defendant's servant kindled the fire in the way of husbandry and proper for his employment, though he had no express command, yet the master shall be liable, for it shall be intended that the servant had authority from his master, it being for his master's benefit:" Per Lord Holt in Tuberville v. Stampe (1698), cited in 2 Street's Foundations of Legal Liability, 451.

Opinion by Mr. Justice Mestrezat, March 15, 1909:

There are certain uncontroverted facts in this case. Dougherty was employed by the defendant company at its car barn to clean the barn and cars, and destroy the waste or rubbish. About 4:30 o'clock on the afternoon of May 25, 1906, he conveyed in a wheelbarrow to a vacant lot near the barn, not owned by the defendant, two armfuls of waste or rubbish, consisting partly of "greasy stuff, waste," but principally of newspapers swept from the cars, which he fired by applying a match to it. The day was very windy, and Dougherty remained with the fire until a few minutes after 5 o'clock when he left it, the flames having been extinguished, but the embers still smoking. While Mary Ross, a child of seven years, living in the immediate neighborhood, was playing with a companion near the fire in the vacant lot after school hours that afternoon, her clothing caught fire and she was badly burned. She died from the effects of the burning, and this action was brought by her parents.

Under proper instructions by the court, the jury found that Dougherty was acting within the scope of his employment with the defendant company when he carried the rubbish across the street to the vacant lot and set it afire, and that Mrs. Pennington, with whom Mary Ross was making her home at the time, was not negligent in the care and control of the child. The learned judge also submitted to the jury to determine whether the defendant company through its employee was negligent in burning the rubbish on the vacant lot under the circumstances and in the manner he did, and in leaving the fire in the condition it was in when Dougherty left it. The finding of the jury establishes the defendant's negligence in this respect.

The single cause of complaint on this appeal is that the court erred in not holding as matter of law that under the evidence in the case the verdict should have been for the defendant. There is no error assigned to the charge, nor to the manner in which the cause was submitted by the learned court to the jury. The court affirmed the defendant company's point that it "was only bound to foresee the nature and probable consequences of leaving the ash heap in the condition in which it was left by Dougherty, and if the jury believe that the injuries incurred by Mary Ross were not such natural and probable consequence, their verdict should be for the defendant."

In his printed brief the counsel says: "We may concede for the sake of the argument that the burning of the sweepings by defendant's workman was the act of the defendant, and that the duty was thereby imposed upon the defendant through its workman to safeguard the fire until it became harmless. This obligation was performed. The cause of the child's injury was the fact that the child rebuilt the fire into a dangerous condition and thereby fired herself." It is claimed by the appellant's counsel that the act of the defendant company in burning its rubbish on the vacant lot was not the proximate cause of the child's injuries, but that there was an independent intervening cause which made the company's act remote, thereby relieving it from liability in this action.

The argument of the learned counsel for the appellant is based upon an assumption of facts which were not found by the jury to exist in the case; at least from the evidence the jury was justified in finding that the fire was communicated directly to the child's clothing, without the intervention of any act on her part or by the act of the other child who was with her at the time her clothing was ignited. There was ample evidence for the jury to find that Dougherty was negligent in his control of the fire after he had put a match to the rubbish. He remained with the fire a little more than a half hour and, according to his own story, the embers were smoking when he left it. It is true he says there was no blaze, but a man of ordinary intelligence, which we must assume him to be, would know that the smoking embers might easily be fanned into a

flame by the high wind which he testified was, at the time, sweeping over that vacant lot.

Hager, a witness on the part of the plaintiff, was sitting on his porch directly across the street from the lot where the rubbish was burned. He testified that he saw Dougherty take the rubbish to the lot, burn it and leave the place. He says that when Dougherty left there was no blaze, but the embers were still smoking. He saw the two little girls go to the ground, and testifies that "they both of them sat down with little sticks this way and began to strike in the embers, . . . . both of them side by side, and they had not been there not over two or three minutes before little Mary jumped up with this blaze about that far (indicating) behind her dress." He further testified that he was afraid the children would get afire when he saw them at the place "because it was still smoking and the wind was blowing so hard I was afraid they would catch fire." He denied that Mary lighted a paper or fanned the embers, and testified that, "In fact they [the two little girls] did not stir from where they sat down until she [Mary] got up to run with the fire." Hager was an eyewitness to the whole affair, and if his testimony was believed by the jury they were justified in finding that the wind fanned the smoking embers into a flame which communicated directly to the child's clothing, or carried a live spark or cinder from the embers against the child's clothing which ignited it. The facts established by the testimony, taken in connection with the undisputed facts in the case, were sufficient to warrant the jury in convicting the defendant company of negligence in not guarding and protecting the smoldering embers, which was the direct and proximate cause of the ignition of the child's clothing, resulting in her death.

Some of the witnesses testified that Mary fanned the rubbish into a flame and lighted a piece of paper from which her clothing caught fire. This is the basis for the contention of the appellant's counsel that "the cause of the child's injury was the fact that the child rebuilt the fire into a dangerous condition and thereby fired herself." But the witnesses who testified to the fire having been communicated to Mary's clothing in this way said that they did not see her skirts get afire, and

that they did not know how she did get afire.  They confirm Dougherty's testimony that the wind was blowing very hard at the time, and say that it "blew your dress all out."  In fact, Edith Clineff, Mary's little companion on the occasion, testified that the paper with which she fanned the embers "was not on fire."  Johnson, another witness, who testified that Mary "blowed the fire with a piece of paper" said that he did not see her dress on fire until she had run across the street.

It is apparent, we think, that there is no evidence in the case which would compel the conclusion that the child set fire to her clothing by a piece of paper in her own hands, and hence the learned counsel for the appellant has based his argument upon the assumption of a material and controlling fact which is not conceded in the case.  But if we admit that there was testimony in the case from which the jury could have found that the child did fan the smoldering embers into a flame which was communicated to her clothing by a piece of paper in her hands, there is also testimony, as we have already pointed out, from which the jury could find that the wind blew live cinders against her clothing or fanned the embers into a flame which communicated directly to the child's clothing while she was seated near the fire.  Which of the two theories was correct and how the child's dress was set afire were manifestly for the jury.  As suggested above, if the jury found, as they could have found under the evidence, that the child's clothing was fired by flames or sparks from the rubbish directly communicated to her dress, then there was manifestly no independent, intervening cause which occasioned her injuries, and the defendant company is responsible in this action, for the consequences of Dougherty's negligent act in not guarding the fire until it was in a harmless condition.  This would warrant the court in refusing to withdraw the case from the jury. We cannot presume that the jury found that the child's injuries were caused by her own negligent act.  Had the defendant's counsel desired to raise the question of whether the facts, as he claimed them to be, constituted an independent, intervening cause, he should have submitted a point for instructions and had a direct ruling by the court.  He cannot now raise

that question under the assignments of error filed in the case. Whether the facts, as he alleges them to be, were an independent intervening cause of the child's injuries, cannot be decided on this record. There being sufficient evidence to establish facts disclosing negligence of the defendant as the proximate cause of her injuries, and that evidence having been submitted to the jury, we cannot now sustain an assignment which alleges that the court erred in not setting aside a verdict based upon the evidence.

The testimony in the case was conflicting as to the circumstances and conditions under which the rubbish was burned on the vacant lot, and as to how the girl's dress was set on fire and hence whether the firing of the child's clothing was the natural and probable consequence of Dougherty's act which he should have foreseen was for the jury. "From the very essence of the thing," says Chief Justice Agnew in Penna. R. R. Co. v. Hope, 80 Pa. 373, 380, "the natural probability of a consequence, which ought to have been seen, is a matter of fact to be determined upon the evidence. Every cause must depend upon its own circumstances." So also was it a question for the jury whether Dougherty exercised the care required of him under the circumstances in starting and guarding the fire: McCully v. Clarke & Thaw, 40 Pa. 399. That case was trespass for not guarding and extinguishing a fire whereby the plaintiff's warehouse and its contents were destroyed. Strong, J., delivering the opinion, said (p. 406): "Whether the defendants had been guilty of the negligence charged, was therefore the principal subject of inquiry; in other words, whether they had exercised such care and diligence to prevent injury to the property of the plaintiff, as a prudent and a reasonable man, under the circumstances, would exercise. Now, it is plain that what is such a measure of care is a question peculiarly for a jury."

The assignments are overruled, and the judgment is affirmed.

Mr. Justice Elkin, dissenting:

If this is a case for the jury at all, I agree that it was properly submitted and that the judgment should be affirmed. It does

not seem to me, however, that appellant was not guilty of any negligence for which it should be made answerable in damages. The standard of care required in order to sustain this action is higher than the law has imposed upon a defendant up to the present time in any similar case. The appellant company is not charged with failure to perform any duty it owed its employees, its passengers, or the public in the operation of its line of street railway. The relation of common carrier and passenger, or of master and servant, did not exist between the parties. The rule adopted in this case must necessarily have general application to the farmer, mechanic, laborer, and every other citizen of the commonwealth who finds it necessary or convenient to occasionally burn brush or rubbish on the highway or upon open lots. I concede that in such cases the duty of reasonable care rests upon the person who starts the fire in order that no injury may recklessly or negligently be inflicted upon the person or property of others. But to my mind, this duty has been met when a person charged with negligence under such circumstances shows that his servant while burning some waste paper on an open lot stood by the little fire until the flames died out, the paper was burned to embers, and only the smouldering ashes remained to mark the spot where the fire was started, and that is this case. To go further and hold that it was his duty to foresee and provide against the possible contingency that a child might stray that way, fan the smouldering ashes into a burning ember sufficient to light a piece of paper held in her hand, from which her clothing took fire and serious injury resulted, is to place upon a property owner, or citizen, a standard of care higher than the law should require in dealing with the customs and usages of people in the practical affairs of everyday life. The custom of burning waste paper, rubbish, brush or leaves at the roadside or upon open lots is as old as our law and as widespread as our commonwealth. In my opinion it is error to apply to such cases the rule which requires the very highest standard of care to be exercised by those having the control and supervision of dangerous agencies such as electricity, natural gas, deadly explosives, and other natural or mechanical forces with which the people are not familiar and

from the dangers of which they cannot protect themselves. What everybody has done for a century certainly should come within the rule of usual and ordinary care. Under such a rule there could be no recovery in this case. It is true the open lot did not belong to appellant, but it is equally true that it did not belong to appellees. Both parties stood upon an equality so far as the use of the lot is concerned. The evidence shows it was the customary place to burn waste paper, also that children frequented it. No question is raised by the lot owner as to the right of appellant to burn waste paper upon the premises. It must therefore be assumed for the purposes of this case that appellant had a right to do what was done, and the only question that can arise is whether it was done in a negligent manner, as to which all that has been heretofore said applies. There is an unwholesome tendency to extend the law of negligence in every possible direction and to all kinds of occurrences until we have reached the point of applying the doctrine to injuries received from accidents resulting from the practices of everyday life. It may be and no doubt is difficult to draw the line of distinction between cases for which there should be responsibility in damages and those in which there should not be. But, in determining the proper rule applicable to such cases, the natural and necessary risks and dangers incident to the affairs of men in organized society which everyone must assume in consideration of the privileges he enjoys by his association and in his dealings with his fellow men, must be an important factor. There are many unfortunate accidents resulting in serious injury to persons, but it will not do to say that someone must be answerable in damages because of sympathy for the injured person when the evidence shows that the party sought to be charged only did what was usual and customary under the circumstances surrrounding the accident. A single verdict against a farmer, or mechanic, or small property owner, might sweep away the frugal earnings of a lifetime, while in point of fact nothing was done except what had been a general custom in the neighborhood.

As I view this case it was not the duty of appellant, nor would it be the duty of any other owner of property, to foresee and

provide against the contingency that did happen, and therefore the injuries complained of were not the result of any negligence for which the law makes the offending party liable.

I would reverse the judgment.