## Mathias Grayhek, Administrator, Appellee, v. Ludwig Stern et al., Appellants.

### Gen. No. 5194.

1. NEGLIGENCE—*violation of ordinance.* The violation of a municipal ordinance is *prima facie* proof of negligence.

2. CONTRIBUTORY NEGLIGENCE—*failure to keep watch of children.* The law does not require persons in humble station in life to keep a constant watch over their children.

3. INSTRUCTIONS—*particular phrases in, where death resulted from wrongful act, approved.* In such an instruction the phrases "pecuniary injuries" and "pecuniary benefit," *held,* not erroneous as wider in their scope than the phrase "injuries to maintenance and support," charged in the declaration.

4. VERDICTS—*when not excessive. Held,* in an action for death caused by wrongful act that a verdict for $3,000 was not excessive where it appeared that the deceased (a girl) was at the time of her death under five years.

5. VERDICTS—*when not disturbed as excessive.* Verdicts in actions brought for the death of a child through wrongful act of the defendant will not be set aside as excessive unless it is clear that the same are the result of passion, sympathy or prejudice. No positive rule can be laid down by which the damages to be awarded can be estimated. In such a case the amount must largely be left to the judgment of the jury and such is the evident intent of the statute.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910. Opinion modified and re-filed April 13, 1910; rehearing denied. *Certiorari* denied by Supreme Court (making opinion final).

COLL MCNAUGHTON, for appellant.

JOHN W. D'ARCY, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought by Mathias Grayhek, administrator of the estate of Stephania Ber-

can, deceased, against Ludwig Stern and Maurice L. Stern, appellants, to recover damages for the benefit of the next of kin of deceased, who died from burns received from a fire alleged to have been negligently kindled and carelessly left unguarded by appellants.

The declaration contained three counts. The first and second counts were substantially alike, and averred that appellants negligently set fire to a quantity of inflammable material at the intersection of Will and Indiana streets in the city of Joliet, by reason whereof certain children of tender years were attracted thereto; that they carelessly left said fire unguarded and that appellee's intestate, a child of tender years, being attracted to said fire, thereby had her clothing ignited and was so burned that she died. The third count was like the first and second except that it contained an averment that the fire was kindled on the street in violation of an ordinance prohibiting the kindling of a fire on a public street. Each count averred that the deceased left her surviving a father, mother, brothers and sister, her heirs, who were thereby deprived of their maintenance and support. A plea of not guilty was interposed and appellee obtained a verdict and judgment for $3,000 and the defendants below prosecute this appeal.

The evidence shows that appellants had, for a number of years, operated a store on Chicago street in the city of Joliet; that the building they occupied was removed from its original location to Indiana street preparatory to constructing a new building on the old site; and that appellants were conducting their business therein while the new building was being constructed. These premises were removed from the general business district of the city of Joliet six or eight blocks, and were in the heart of the largest Austrian settlement in the city. There were in the same neighborhood a meat market, grocery store and several saloons. The rest of the property was either residence property or vacant. On the morning of September

28, 1906, a quantity of waste paper, sweepings from the store, and other refuse material was piled on Will street, a short distance south of the building, and set on fire by appellants. For a time one of appellants was in charge of the fire, and they contend that it was extinguished as early as ten o'clock. At about eleven o'clock Stephania Bercan, appellee's intestate, a child aged four years and nine months, was seen running from the direction of the fire towards her home with her clothes on fire. She was taken to a hospital and died in a few hours from the effects of the burns.

That appellants built the fire in the street as charged in the declaration is not denied, but that it was left unguarded is disputed. The kindling of the fire was a violation of the ordinance as charged in the third count. "The violation of a statute is *prima facie* evidence of negligence. This is also true as to the violation of a city ordinance, where the ordinance is such an one as the city is authorized by its charter or by statute to make." U. S. Brewing Co. v. Stoltenberg, 211 Ill. 531. "Its violation constitutes a *prima facie* case of negligence, if such violation caused the injury, which resulted in the death of the deceased." U. S. Brewing Co. v. Stoltenberg, *supra;* Channon Co. v. Hahn, 189 Ill. 28; True & True v. Woda, 201 Ill. 315.

It is not disputed that the fire attracted the attention of and drew to its locality appellee's intestate and a girl a little older. One witness testified that the child went with her as far as the grocery store which was close to appellants' building; that one of appellants was burning boxes when she went in; that when she came out the fire was burning a little but appellant was not there; that she went from the grocery store to the butcher shop and that when she came out about ten minutes after she went into the grocery store she saw the child on fire running from the place of the fire straight home. Another witness testified that he saw the deceased squat by the fire and stir and scatter its remains with a stick, and saw the back of her dress

catch fire from a lighted piece of paper. There was proof from a number of witnesses that she was seen running from the direction of the fire with her clothes aflame. It is not denied that she died from the burns she received, and there was no proof that there was any other fire in that vicinity or means by which her clothing could have become ignited. There was an effort made to discredit the evidence of appellee's witness who testified that he saw the child's clothing take fire, by attempting to show that he had made statements at another time at variance with his evidence. Appellants' proof tended to show that the fire was extinguished before the child's clothes were ignited, but in the absence of evidence that there was any other fire in that locality that morning, and from the evidence that the child was seen going towards the place where the fire was, and seen fleeing from it with her clothes on fire, it is clear to us that the jury were justified in finding from the direct evidence that the child's clothing was ignited from the fire kindled by appellants. Moreover, had there been no eye witness to the accident, or if the jury discredited such witness, we think, under the authority of U. S. Brewing Co. v. Stoltenberg, *supra,* that the circumstantial evidence would sustain the verdict.

The second instruction given for appellee told the jury that if they found the defendant guilty, "then the plaintiff  *  *  *  is entitled to recover such sum as  *  *  *  will compensate the heirs at law  *  *  * for the pecuniary injuries." The third instruction given for appellee concluded as follows: "In estimating the amount of damages to be awarded to the plaintiff, as administrator, you may consider the pecuniary benefit which the next of kin might have derived from the deceased at any age of her life had she not come to her death as disclosed by the evidence, and the jury are not confined to the pecuniary value of her services to the next of kin until she arrived at the age of eighteen years." Appellants argue that these instruc-

tions gave the jury too much latitude in measuring appellee's damages, on the ground that the terms "pecuniary injuries" or "pecuniary benefit" were wider in their scope or meaning than "injuries to maintenance and support" as charged in the declaration. "Pecuniary" means "monetary; financial," and the words "pecuniary injuries" are found in Hurd's Revised Statutes, 1908, section 2, chapter 70, entitled "Injuries." In our opinion the jury could not have understood either from the declaration, if they saw it, of which there is no proof, or from the instructions, that a recovery for other than the financial loss which the family sustained by the death of this girl, was referred to. An instruction similar to appellee's third was approved in Baltimore & Ohio Southwestern Railway Company v. Then, 159 Ill. 535; North Chicago St. Railroad Company v. Johnson, 205 Ill. 32; U. S. Brewing Co. v. Stoltenberg, *supra.*

Appellants urge that the parents of the child were negligent in permitting her to be upon the street unattended. There is no proof that either her father or mother knew there was any fire in the neighborhood. The father was in the house and the child had asked to go to a neighbor's. The mother was attending to her household duties in the rear of the home and the proof shows that the child went to the neighbor's and returned home after a time with some flowers, then went out again, and accompanied a neighbor as far as the grocery store, which was close to the building occupied by appellants. There is no evidence to support the contention that the parents were guilty of contributory negligence. They were of humble station in life, and the law does not require that such persons shall keep a constant watch over their children. City of Chicago v. Hesing, 83 Ill. 204; I. C. R. R. Co. v. Warriner, 132 Ill. App. 301, and cases there cited. The jury were, however, instructed at the request of the defendant that if the jurors believed that the negligence of the parents contributed to the death of the child then there could

be no recovery and it was not error to refuse other instructions asked on that proposition.

It is contended that the verdict is excessive and is the result of prejudice or sympathy; also that owing to the humble station in life of the parents and probable opportunities of the deceased had she lived, it is doubtful if she would have been self-supporting. The deceased was strong, active and healthy. The evidence did not indicate that she was predisposed to disease or infirmity of any kind, nor was there anything to warrant the conclusion that she would not have had the average earning capacity or have lived to an average age. The services which the child might have rendered her next of kin, could not possibly be known, and depended on many unforeseen circumstances such as the continued life of the parties, their condition as to health, etc. No positive rule can be laid down by which damages can be estimated in a case like this, and the courts have differed greatly upon the subject. The amount must necessarily be left largely to the judgment of the jury and such is the evident intention of the statute. Rev. Stat., chap. 70, sec. 2. A number of cases are cited on this point by both parties, none of which are controlling because they differ in facts and circumstances from the case at bar. In all, however, is seen the tendency and intention of the courts to uphold the verdict of the jury unless it is clearly the result of passion, sympathy or prejudice. We cannot say that the verdict here is tainted by any of these elements, and finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE DIBELL took no part.