GILLIGAN, RESPONDENT, v. CITY OF BUTTE, APPELLANT.

No. 8278

Submitted December 13, 1945. Decided March 5, 1946.

166 Pac. (2d) 797

(350)

352

Mr. P. E. Geagan, of Butte, for appellant.

Mr. W. H. Maloney and Mr. Philip O'Donnell, both of Butte, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

Hazel Ann Gilligan, an infant five years and nine months old, while playing on a public street at the rear of her home in the city of Butte on Sunday afternoon June 18, 1939, was severely burned and permanently injured when her dress caught fire from the flames of an open torch or flare which it is alleged the defendant city negligently left, suffered and permitted to be and remain burning, unguarded and unattended, during the daylight hours in the afternoon of said day on said street,

being in a residential district of the city and known by the defendant to be much used and frequented by children of tender and immature years. The infant through her guardian ad litem brought this action against the city of Butte to recover damages for the bodily injuries so inflicted.

In her complaint plaintiff alleges the appointment of her father as guardian, the corporate existence of the defendant; that at the time of suffering her injuries she was of the age of five years and nine months, and residing with her father and mother at No. 734 East Mercury street in a densely populated residential district in the city of Butte; that East Mercury and Division are parallel streets extending in an easterly and westerly direction and intersecting South Gaylord street (the latter running in a northerly and southerly direction), at the east end of the 700 block wherein plaintiff resided; that the lot of ground on which plaintiff resided extended north to and fronted on East Mercury street and that such lot extended southward from East Mercury street to Division street; that during the daytime there was much vehicular traffic on both East Mercury and South Gaylord streets but that there was very little traffic upon Division street; that children of tender and immature years residing in said district were in the habit of avoiding East Mercury street and South Gaylord street and of being upon and playing upon Division street in the 700 block and using the same for all of the purposes of a public highway and thoroughfare, especially in the daylight hours of each day, all of which was well known to the defendant, its servants, agents and employees, or by the exercise of reasonable care on their part, would have been known to them; that for several days immediately prior to the happening of the accident the defendant was engaged in repairing and resurfacing Division street and in that connection had piled and heaped, in a ridge running lengthwise of said street, large quantities of loose oiled sand; that at various points along said ridge defendant had placed lighted oil flare lamps which it had permitted to burn during all the daylight hours of the day of the accident; that said flare lamps

were in the shape of globes or spheres and resembled black balls of about 8 to 10 inches in diameter; that a wick fed by oil protruded from the flares through an opening above which there was a cap so set that when the flare was burning the flame therefrom was prevented from rising directly upward but instead was deflected and caused to blaze to either side of the cap in such manner that the flame extended from the opening and to the side thereof; that there were no guards upon or around the flares or around the flames proceeding therefrom; that no barrier or other obstruction was placed around said ridge of sand so left in the street; that no watchman was stationed at or near the places where such flares were burning to warn children including plaintiff and other persons using said street of danger or to prevent them from coming in contact with the flames from such flares; that defendant well know or in the exercise of reasonable care should have known that such lighted flares so left burning in the daytime constituted a danger to children of tender and immature years and exposed them to the danger of being burned by the flames from the flares; that at all times the defendant, its servants, agents and employees further well knew, or in the exercise of reasonable care, they should have known, that neither law nor custom required nor sanctioned the use of such lighted flares upon public thoroughfares during the daylight hours and that such use was contrary to the usual custom in the city of Butte and county of Silver Bow as well as generally; that at various times during the day of the accident several children were playing in the loose sand upon Division street and by the ordinary predilections and impulses of normal children were attracted to and induced to play upon such street and upon the sand therein under the aforesaid conditions; that defendant, its servants, agents, and employees, with the knowledge and under the circumstances above set forth carelessly, recklessly, negligently and knowingly placed, lighted and permitted said burning flares to be and remain on and along said ridge of loose sand on Division street during the daylight hours of Sunday June 18, 1939; that at

about 5 o'clock in the afternoon of said day, it then being daylight on a clear day with the sun shining, the plaintiff, unable because of her age and immaturity, to perceive or appreciate the danger confronting her, came and played upon said ridge of sand, being attracted to said street and sand and burning flares, and that without perceiving or appreciating the danger there existing, plaintiff's clothing came in contact with the flame of one of the flares and caught on fire as a direct and immediate consequence of which plaintiff suffered the burns and injuries which she set forth and described in detail in her pleading, to plaintiff's loss and damage in the amount demanded.

By answer defendant admitted certain allegations of the complaint and denied all others including all allegations charging it with negligence.

As a first affirmative defense defendant alleged that at the time of the accident the construction work on Division street, including the placing of loose sand and gravel on the street and the placing of flares thereon, was done by Works Projects Administration through its agents, employees and servants as a WPA project sponsored by the defendant and that in sponsoring, supervising and conducting the said project the defendant city was acting in its governmental capacity for the purpose of alleviating unemployment and of giving employment on public works projects to citizens of the defendant city.

As a second affirmative defense defendant alleged that "plaintiff is a minor child and as this defendant is informed and believes was at the time of the accident alleged * * * of the age of approximately five (5) years and nine (9) months" and that the plaintiff was guilty of contributory negligence which precludes recovery herein.

By her reply plaintiff denied generally the new and affirmative matters pleaded in the answer.

The cause was tried to a jury which rendered its verdict for plaintiff awarding her damages. From the judgment entered on such verdict the defendant city has appealed.

Defendant asserts that the trial court erred in denying its

motion for judgment of nonsuit and its motion for a directed verdict made upon identical grounds, and in giving, over defendant's objections, instructions numbered 10 and 11.

The motion for nonsuit and the motion for a directed verdict first challenge the sufficiency of the allegations of the complaint to state a cause of action.

In an action to recover damages for actionable negligence ▉ the complaint must allege facts showing three elements, namely: (1) That the defendant was under a legal duty to protect plaintiff from the injury complained of; (2) that the defendant failed to perform such duty; and (3) that the injury complained of was proximately caused by defendant's delinquency. Johnson v. Herring, 89 Mont. 156, 167, 295 Pac. 1100.

It is well settled law of this state that it is the duty of a ▉ municipal corporation to keep its streets in a reasonably safe condition for use by the public. Headley v. Hammond Bldg., Inc., 97 Mont. 243, 248, 33 Pac. (2d) 574, 93 A. L. R. 794; Maynard v. City of Helena, Mont., 160 Pac. (2d) 484. The officials of the municipality are charged with the duty to keep in touch with the condition of the streets and alleys of the municipality (Barry v. City of Butte, 115 Mont. 224, 229, 142 Pac. (2d) 571) and if they negligently fail in the performance of that duty the city is liable for the damages resulting therefrom unless contributory negligence is shown. Tiddy v. City of Butte, 104 Mont. 202, 65 Pac. (2d) 605; Barry v. City of Butte, supra.

The general public has the right to the use of the public ▉ streets of a city and such streets are open to persons of all ages. The municipality owes a duty of care toward children rightfully upon and using its streets and a child in the street is not in any sense a trespasser, even though the child is using the street for the purposes of play. City of Chicago v. Keefe, 114 Ill. 222, 2 N. E. 267, 55 Am. Rep. 860; City of Waverly v. Reesor, 93 Ill. App. 649; City of Indianapolis v. Emmelman, 108 Ind. 530, 9 N. E. 155, 58 Am. Rep. 65; Corbin v. City of

Philadelphia, 195·Pa. 461, 45 A. 1070, 49 L. R. A. 715, 78 Am. St. Rep. 825; Gibson v. City of Huntington, 38 W. Va. 177, 18 S. E. 477, 22 L. R. A. 561, 45 Am. St. Rep. 853; Hawley v. City of Atlantic, 92 Iowa 172, 60 N. W. 519; City of Omaha v. Richards, 49 Neb. 244, 68 N. W. 528; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Washington & Georgetown R. Co. v. Gladmon, 15 Wall. 401, 21 L. Ed. 114.

While a city is not an insurer against accidents yet the law ▉ imposes upon it the duty of guarding against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable prudence and care. Remesz v. City of Glasgow, 95 Mont. 595, 28 Pac. (2d) 468. Where alluring instrumentalities of an inherently dangerous character have been placed in a street whereon children may be reasonably expected and whereon they habitually play, a high degree of vigilance is necessary to constitute ordinary care. As is said in Schmit v. Village of Cold Spring, supra [216 Minn. 465, 13 N. W. (2d) 384], "If a person of ordinary prudence ought to anticipate from his acts or omissions injury to someone to whom he owes a duty, then it is negligence on his part to só act. If from the negligence an injury flows in unbroken sequence as a natural and probable consequence, liability follows."

In Burns v. Eminger, 84 Mont. 397, 276 Pac. 437, 442, this ▉ court said: "In determining the proximate cause of an injury or accident, we must always look to the succession of events existing in every transaction, more or less dependent each upon the preceding event, and it is the province of the jury to look to such succession of events and ascertain whether they are naturally and probably connected with each other by a continuous sequence or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time. Milwaukee etc. Ry. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. If this sequence of events leads up to and results in the injury without intervening independent cause, it is the efficient and proximate cause. 'The cause of

an event is the sum total of the contingencies of every description which, being realized, the event invariably follows. * * * Ordinarily that condition is usually termed *the cause* whose share in the matter is the more conspicuous and is the more immediately preceding and proximate to the event. Where a particular event, according to human experience, is likely to be followed by another particular event, the person whose agency produced the former event is responsible for any injurious consequence which may flow from the latter. The reason is that he ought to have foreseen this consequence.' (Citing authorities.)''

In Gates v. Northern Pacific R. Co., 37 Mont. 103, 116, 94 Pac. 751, 755, Mr. Justice Smith in delivering the opinion of the court said: ''It is my judgment that when the owner or occupier of grounds brings or artificially creates something thereon especially attractive to children, as shown by the nature of the thing itself and the fact that a child was, or children were, attracted to it, and leaves it so exposed that they are likely to come in contact with it, either as a plaything or an object of curiosity, and where their coming in contact with it or playing about it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to use ordinary care to guard it so as to prevent injury to them.''

In Fusselman v. Yellowstone Valley Land & Irrigation Co., 53 Mont. 254, 163 Pac. 473, 475, Ann. Cas. 1918B, 420, this court quoted with approval from Cooley on Torts to the effect that ''leaving a tempting thing for children to play with exposed, where they would be likely to gather for that purpose, may be equivalent to an invitation to them to make use of it.'' Again in the same case the following is quoted from Thompson on Negligence, viz.: ''It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed; and which would exempt him from liability for the consequence of

leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life.''

In Barrett v. Southern Pac. Co., 91 Cal. 296, 27 Pac. 666, 667, 25 Am. St. Rep. 186, it is said: ''In the forum of law, as well as of common sense, a child of immature years is expected to exercise only such care and self-restraint as belongs to childhood, and a reasonable man must be presumed to know this, and the law requires him to govern his actions accordingly. It is a matter of common experience that children of tender years are guided in their actions by childish instincts, and are lacking in that discretion which, in those of more mature years, is ordinarily sufficient to enable them to appreciate and avoid danger; and, in proportion to this lack of judgment on their part, the care which must be observed towards them by others is increased; and it has been held in numerous cases to be an act of negligence to leave unguarded and exposed to the observation of little children dangerous and attractive machinery, which they would naturally be tempted to go about or upon, and against the danger of which action their immature judgment interposes no warning or defense.''

In 19 Cal. Jur. 624, it is said: ''One who places a dangerous contrivance in a place frequented by children, and knowing, or having reason to believe, that children will be attracted to it and subjected to injury thereby, owes the duty of exercising ordinary care to prevent injury to them, and this because he is charged with knowledge of the fact that children are likely to be attracted thereto and are usually unable to foresee, comprehend and avoid the danger into which he thus allures them.''

In City of Indianapolis v. Emmelman, supra [108 Ind. 530, 9 N. E. 157], the court said: ''Whoever * * * does anything in, or immediately adjacent to, a public street, calculated to attract children of the vicinity into danger, which they cannot appreciate, owes the duty of protecting them by suitably guarding the source of danger, or, in case this is impracticable, by

giving timely warning to their parents and guardians of the existence of the danger. * * * the liability of a city is precisely the same in case a child, rightfully in a street, sustains injury from a defect created therein by the city, as in the case of an adult, who is injured, while free from fault, from a like cause. It would shock all sense of justice to hold that a city might dig a great pit in a street, and leave it so that children might be lured into it, and yet deny to parents, who were without fault, any remedy for the loss of a child.''

As was said in Snook v. Anaconda, 26 Mont. 128, 66 Pac. 756, 759: ''Toward the plaintiff the city was under the same obligation to exercise diligence on Sunday as on any other day. * * * The duty of the city was the same as the duty of an individual person would have been under the same circumstances.''

The complaint in this action alleges ample facts disclosing a duty owing by the city to plaintiff, a breach of that duty by the city and resulting damages to plaintiff, i. e. injuries to her proximately caused by the defendant's failure to perform its duty. The pleading is sufficient and states a cause of action. Johnson v. Herring, supra; Fusselman v. Yellowstone Valley Land & Irrigation Co., supra.

Insufficiency of the evidence to show any act on the part of the defendant proximately causing plaintiff's injuries is urged in defendant's motions for nonsuit and directed verdict. Upon motion for nonsuit or directed verdict the evidence must be viewed from the standpoint most favorable to plaintiff and every fact must be deemed proved which the evidence tends to prove. Mellon v. Kelly, 99 Mont. 10, 41 Pac. (2d) 49; McCulloch v. Horton, 102 Mont. 135, 56 Pac. (2d) 1344; Blinn v. Hatton, 112 Mont. 219, 114 Pac. (2d) 518; Johnson v. Herring, supra.

Mrs. Mary DeLong, a witness for plaintiff testified that on the day of the accident and for eight years prior thereto she resided at No. 740 East Mercury street, being ''next door'' to plaintiff's home; that East Mercury street is a good thoroughfare where traffic moves with considerable speed which ''doesn't make it good for children''; that Division street is ''kind of a

back street" whereon the children of the neighborhood "mostly all played"; that plaintiff's backyard "goes right to Division" street; that for four or five days or possibly a week prior to the accident sand was being placed and spread on Division street; that on Sunday June 18, 1939 the road material heaped in the middle of Division street with eight or ten lighted flares thereon, which flares were burning all day; that the day was bright and clear; that between 5 and 5:30 o'clock in the afternoon she heard plaintiff screaming and saw her running from Division street toward her home. The witness observed plaintiff's mother rush out of the house, testifying that plaintiff "ran in from the outside and her clothes were afire and when she got to the middle of the yard * * * her mother heard her creaming and her mother pulled her clothes off right in the middle of the yard."

Mrs. Alice S. Hess, a witness for plaintiff, testified that as a child she used to play on Division street; that she observed the flares burning on Division street around noon on the day of the accident which was a "sunny day"; that between 4:30 and 5 o'clock on the afternoon of June 18, 1939, she observed plaintiff running into the yard of her home with her clothes on fire and saw plaintiff's mother grab plaintiff and tear her clothes off.

At the time of the trial plaintiff's mother was dead but plaintiff's father testified that on June 18, 1939, he and his wife resided at 734 East Mercury street with their three children namely, David aged eight years; Hazel Ann, the plaintiff, aged five and a half years and Marjorie aged two years; that numerous children residing in that neighborhood were in the habit of playing on Division street which "was a regular playground" for them; that he always advised his children to play on Division where there was little traffic rather than on East Mercury or South Gaylord streets whereon the traffic was heavy and the driving very fast; that work was being done on Division street for a couple of weeks prior to the accident during which time the street was graded, surfacing materials were hauled and sand was mixed with oil; that for a number of days immediately preceding the accident he had. observed city of Butte trucks, so

marked, engaged in such work on Division street; that for about three days prior to the accident there was a cone-shaped ridge of sand about three feet wide and two feet in height extending along Division street and, to the south of the center thereof for about two blocks; that along the ridge of sand were a number of "bomb" flares, spherical in shape and about eight to ten inches in diameter filled with distillate and having a wick at the top enclosed in a cap with openings on the side from which came the flame or flare; that when perfectly still the flare or flame is round but if the flare lamp is struck the flame may be sent out three or four feet; that the witness observed the flares burning on Division street between 1 and 2 o'clock in the afternoon on the day of the accident and that shortly after the accident he walked into the street and observed that for the entire length of Division street, all the flares were burning; that he was at home on Sunday afternoon June 18, 1939 and hearing a commotion he ran out to find his daughter, the plaintiff, naked except for her shoes and anklets, and severely burned; that it was then "hours before dark" and the sun was shining; that the witness carried plaintiff to the front room of the home where he placed her on a bed; that he then proceeded to the kitchen where he cut the head out of a can of olive oil and applied the oil to plaintiff's burns after which some salve brought in by neighbors was applied and witness then proceeded to a neighbor's house from which he telephoned Dr. Joesting at approximately 5 o'clock p. m.

Dr. H. C. Joesting, a duly licensed and eminently qualified physician and surgeon specializing in pediatrics, testified that he attended plaintiff at her home "somewhere between four and six o'clock in the afternoon" of June 18, 1939; that she had suffered numerous burns and was in extreme pain; that some were third and fourth degree burns; that some of the burns could not be healed and that he performed a skin grafting operation on plaintiff some eleven months after the accident; that her injuries are permanent and disfiguring in character; that there is a large area on plaintiff's side that is badly scarred

resulting in contracting of the muscles of her shoulder which in time will become more pronounced causing interference with the upward motion of her arm. The witness also testified that "fire is definitely attractive to all children"; that they are curious and "are trying to learn every day, and they are attracted to anything different and new."

Dr. D. E. Hale, a regularly licensed physician and surgeon and holder of a fellowship in surgery at the Mayo Clinic, testified as to plaintiff's injuries and that he and Dr. Joesting had performed on plaintiff the skin graft operation made necessary by the character of plaintiff's burns.

At the time of the accident plaintiff's brother, David Gilligan, was eight years old. David testified that on the afternoon in question he and plaintiff were in the street adjacent to their backyard playing with one of the burning flare lamps and putting papers on the flame thereof. He testified further: "Well, we were playing with the lamps, and a breeze came up and it caught on her dress, and I didn't notice for about two seconds, and I looked down, and I said: 'Hazel, your dress is on fire.' And then she got up and began to run and scream, and I said 'Lay down on the road, Hazel!' But she didn't hear me. * * * Well, my mother was out on the back porch, and Hazel ran up to the porch, and mother tore off her dress and threw it out in the back yard."

Certain sections of Ordinances Nos. 1063 and 828 of the city of Butte were received in evidence. In Ordinance No. 1063 it is provided that at the head and in charge of the Department of Public Works shall be the Commissioner of Public Works of the City of Butte, who shall be ex-officio City Engineer; that such Commissioner shall be assisted by an Assistant Engineer and by a Superintendent of Streets and by other designated officers and that the duties of the Superintendent of Streets shall be to oversee and supervise the work upon the public streets and alleys of the city of Butte. Section 4 of Ordinance No. 828 provides that among other duties, it shall be the duty of the City Engineer to locate the lines and grades of all streets and side-

walks, alleys, avenues or other public ways and to determine the position, size and construction of all public work or appurtenances and to prepare plans, maps or profiles of the same and to make estimates and furnish specifications for any of said work whenever required to do so by the Mayor or City Council; that he shall have general supervision of all contracts or other work and see that it is performed in a workmanlike manner and in accordance with the authorized plans and in conformity with the terms of the contract and specifications and that he shall perform such other duties as may be imposed upon the City Engineer or Assistant City Engineer by any of the ordinances of the city of Butte or by the direction of the Mayor or City Council.

Clearly, the above evidence offered by the plaintiff on her case in chief presented the question of whether the defendant exercised ordinary care under the circumstances shown which was a question of fact for the jury and defendant's motion for nonsuit was properly denied. Johnson v. Herring, 89 Mont. 420, 427, 300 Pac. 535.

The testimony of the witnesses produced by the defendant supplemented the evidence introduced by plaintiff and made plaintiff's case even stronger.

Frank R. Curran, a witness for the defendant, testified that on the day of the accident and for two years prior thereto he was the City Engineer of the city of Butte; that for ten years prior to his appointment as City Engineer he had served as assistant City Engineer; that all projects in the city under construction by the WPA were entirely under his direction; that he acted in an initiatory capacity as sponsor agent of the city of Butte and that on June 18, 1939 there was a WPA project covering Division street in Butte under his direction.

Arthur E. Johnson, a witness for defendant, testified that on the day of the accident and for about seven months prior thereto he was employed as a watchman on WPA working from 4 o'clock p. m. to 12 o'clock midnight; that among his duties was the filling and cleaning of the flare bombs used on the

work; that on the day of the accident he started filling and cleaning the flare bombs on Division street at about 5:30 o'clock p. m. and that later, between about 7:30 and 8 o'clock in the evening, he returned and lighted the flares; that it was also his duty to watch the tools; that he was instructed "if any children were playing around the lights to tell them to stay away"; that he told several groups of children to stay away but that, "It wasn't because they were playing around the lights, or anything like that"; that whenever he saw a group of children around, regardless of whether they were around the lights or not, he warned them to stay away from them; that almost every day or night he saw four or five or probably more children playing on the south side of Division street. Concerning such children so playing the witness testified: "I called them over to me and told them that it was very dangerous to play with these flares; probably they would get burned. I couldn't testify what children they were. They were children playing there, and I took it on myself to warn them that way. I didn't wish to see any of them get hurt. I knew they were dangerous to work around or play around."

R. P. Herrick, a witness for defendant, testified that for twenty-two years he had been engaged in contracting for oiling work, paving work and grading on city streets in Silver Bow county, Montana; that contractors in that community at night warn the public of obstructions in the highway while paving work is going on by placing warning lights; that bomb flares are used for this purpose and that the usual custom was to light such flares "before dark." On cross-examination this witness testified:

"Q. Would you use such a signal in the day time? A. No.

"Q. What would you use in the daytime to warn the public of an obstruction? A. Signs.

"Q. And contractors generally have such signs? A. Yes, sir.

"Q. And they put them upon excavations? A. Yes, sir.

"Q. You would place a different sign, would you not, out in the county districts than you would in the City? A. Yes.

"Q. You would not expect to find so many children walking out on the highways out in the country that you would on the streets in a residential district? A. Naturally not, no."

He further testified that bomb flares are used *in the night time* by contractors in the city as well as in the country districts but that there would be no object in having them burning on the project *in the day time*.

William J. Kiely, a contractor engaged for more than twelve years in street paving and other municipal work in the city of Butte, was a witness for defendant. He testified that the purpose of bomb flares is to throw a light and thus serve as a warning *at night* of the presence of an obstruction; that it was the common practice of contractors in Butte to set the flares "up just before dark in the evening and to extinguish the flares in the morning"; and that in the daytime a red flag would be more efficient as a warning signal.

Clearly the above evidence presented questions of fact to be determined by the jury.

In Morse v. Douglas, 107 Cal. App. 196, 290 Pac. 465, 467, the court said: "The trailer with its fire box and vat of boiling and smoking tar, with a convenient stick protruding with which to stir the molten mass, was attractive to children. * * * This should have been apparent to an adult of usual experience taking the most ordinary interest in the safety of others. * * * The ordinary care with which appellants are charged requires them to use ordinary prudence in the conduct of the affair under consideration. This implies the use of ordinary foresight and prudence to prevent the happening of an event which in the ordinary and usual course might be expected to happen. The witnesses described the district in which the trailer was left by appellants, as a residential district fairly closely built up with dwelling houses. It is a matter of common knowledge that dwellings in a residential district of a city are occupied by families, and that families consist of parents and their children. It is also a matter of common knowledge, that in such districts, children play in the streets and are attracted to houses under

construction, and by sand piles. Appellants should not be heard to plead ignorance of a fact, when, by the use of the most ordinary intelligence and a recognition of the entirely obvious conditions existing and surrounding the place of the accident, the existence of such fact immediately becomes apparent. A person should be charged with seeing that which is within clear view, and of knowing that which is within the common knowledge of all. They certainly had reason to believe, and should have known, that the place in which they left their dangerous contrivance was frequented by children who would be attracted to it and injured thereby. (Citing cases.)''

As a further grounds for its motions for nonsuit and for a directed verdict defendant asserts that the evidence shows plaintiff to have been guilty of contributory negligence. The law is well settled that in this state the defense of contributory negligence is not available in an action such as this where, at the time of sustaining her injuries, the plaintiff was under the age of seven years. Johnson v. Herring, supra; Burns v. Eminger, supra.

As a so-called "affirmative defense," defendant pleaded that all work done upon Division street "including the placing of loose gravel upon said street and the placing of torches thereon * * * was done by said Works Projects Administration through its agents, employees, and servants" as part of WPA project No. 2716 sponsored by the defendant city for the purpose of employing its citizens, and as a grounds for its motions to take the case from the jury defendant urges that the evidence fails to show any relationship of master and servant existing between the city and the person in charge of the lights on Division street on the day of the accident and fails to show any connection between the defendant City of Butte in the placing of the lights on any obstruction in Division street. However, the defendant supplied the material, plans and supervision for the WPA project on its streets, and, in the eyes of the law, the workmen there employed were performing the work for the city. In Barry v. City of Butte, supra, a negligence action against the

368

city of Butte, we said that it was immaterial that the workmen engaged in improving a public thoroughfare in the city were working under WPA. In City of Grandview v. Ingle, Tex. Civ. App., 90 S. W. (2d) 855, 857, the court said: ''It is true that the laborers who removed and failed to replace the slab were working under the National Industrial Recovery Act and were receiving their pay from the federal government, but these are not the controlling issues. 39 C. J. 1270, sec. 1456. 'A servant may be loaned or hired by the master for some special purpose so as to become, as to that service, a servant of the party to whom he is loaned or hired, and to impose on the latter the usual liabilities of a master.' 39 C. J. 1274; Missouri K. & T. R. Co. v. McGlamory, Tex. Civ. App., 34 S. W. 359, 361; Gulf, C. & S. F. R. Co. v. Shelton, 96 Tex. 301, 72 S. W. 165.''

Defendant, in its motions, further contends that the evidence shows the injuries sustained by plaintiff were the result of an accident and without any fault or negligence on the part of the defendant or its servants. In such contention we find no merit.

In Hall v. New York Telephone Co., 159 App. Div. 53, 54, 144 N. Y. S. 322, 324, the court said: ''But it is further urged that the negligent act complained of was not a proximate cause of the plaintiff's injury. It is, of course, true, as counsel contends, that without the lighted match the accident would not have happened. Neither would it have happened if the defendant's workmen had not left the dangerous substance by the roadside. The rule is well settled that, where several proximate causes contribute to an accident, each is an efficient cause, if without it the accident would not have happened. (Citing cases.) If, in the exercise of reasonable caution, it could be foreseen that the children might obtain this dangerous substance, set fire to it and burn themselves, then there was such a relation between the negligent act and the accident as to make it a proximate cause of the accident. I think the circumstances were such that the jury was warranted in finding that an accident such as this might reasonably be apprehended from the leaving

of this inflammable substance in the highway, where children went and had a right to be, and would be likely to find it. It is not necessary that the particular consequences or the precise injuries should be anticipated or foreseen, to make the defendant liable. (Citing cases.)''

In Lombardi v. Wallad, 98 Conn. 510, 120 A. 291, 23 N. C. C. A. 249, it was held that the negligence of the owner of premises in leaving unattended the embers of a fire built to burn rubbish in a yard used by children residing in tenements on the premises as a playground was the proximate cause of the death of a child whose clothing was ignited by another child with a stick which he lighted in the embers. .

In Davenport v. McClennan, 88 N. J. L. 653, 96 A. 921, it was held that the negligent act of a person failing to extinguish a fire which he had set in a public street for burning leaves was the proximate cause of injuries resulting to a child five years old whose clothing was set on fire by the flames when the child gathered and fed other leaves into the fire, the court saying: ''The starting of a fire in a public street is the committing of a nuisance, and the wrongdoer in leaving it still burning and unguarded is responsible for the consequential damages which may be reasonably apprehended will result from such an act; one of them being that very young children without capacity to estimate or appreciate the danger may, while playing in the street, interfere with it. The act of the child in the present case was not an 'intervening cause,' in that it destroyed the casual connection between defendant's negligent act and the resulting injury, but rather an act which contributed to it, and, if the plaintiff was of sufficient age to be charged with contributory negligence, it might be a good defense; but this plaintiff was only five years old when he was injured, and the court would not have been justified in holding, as a matter of law, that he was of sufficient capacity to be charged with such negligence, and the most favorable action the defendant was entitled to was the submission of that question to the jury, and therefore

it was error to nonsuit either upon the ground of intervening cause or contributory negligence."

Specht v. Waterbury Co., 70 Misc. 404, 127 N. Y. S. 137, 142 (affirmed 144 App. Div. 138, 129 N. Y. S. 1147), was an action for damages against one whose employee had built a bonfire to burn waste paper on the employer's property near the street when a wind was blowing and the clothing of a six-year old girl was set on fire either by the burning paper blowing about or by being ignited when the child was attempting to take a wire out of the burning pile with a stick. There the court said: "It appears to me to be a very hard rule which holds that the question of his (defendant's) negligence is not to be submitted to a jury as against this six year old child. I doubt if an open box of poisoned candy with the contents conspicuously displayed towards the street would have any greater attraction to a six year old child than this fire."

In Piraccini v. Director General of Railroads, 95 N. J. L. 114, 112 A. 311, 312, 36 A. L. R. 294, the clothing of a 5 year old girl was ignited from a fire set by an employee of defendant near a path long frequented by the public including children. From the burns so received the child died. Suit based on defendant's negligence was brought by the administrator of the deceased child's estate and verdict directed for defendant. In reversing the judgment and remanding the cause for a new trial the appellate court said: "There remains the question whether there was any evidence of negligence to go to the jury. The test is whether injury to the plaintiff or to a class of which the plaintiff was one ought reasonably to have been anticipated. (Citing cases.) To ask the question in this case is to answer it. A fire was intentionally set by a servant of the railroad company. * * * It was in the midst of a populous city, near a park frequented by the public for many years, with the acquiescence of the railroad company and frequented by school children, near also to land significantly called 'playground.' * * * It was error to direct a verdict for the defendant."

Instruction No. 10 reads: "If you believe from a preponder-

ance of the evidence that the defendant, through its agents and servants, placed the flares on the pile of sand in Division Street on the 18th day of June, 1939, and at the time knew or should have known, as a reasonable person, that such flares when lighted would be likely to attract children residing in that vicinity and cause injury by burning to some one or more of them, then it was the duty of the defendant to guard against such a situation and its failure to do so would constitute negligence on its part.''

Instruction No. 11 reads: ''You are instructed that if you believe from a preponderance of the evidence that flare lights of the type and description alleged in the complaint, were knowingly allowed or permitted to be and remain burning upon Division Street during the daylight hours of the 18th of June, 1939, by the defendant city and that the defendant city knew or as a reasonable person should have known that such flare lights, so burning, would be likely to attract children and would be likely to injure some one of them by burning and if you further believe from a preponderance of the evidence that Hazel Ann Gilligan, the plaintiff herein, was attracted to one of said lighted flares and as a consequence was burned by it, then and in that case, the defendant would be liable for any damage sustained by the plaintiff arising from such burns and your verdict must be for the plaintiff.''

Defendant complains that the instruction, No. 10, supra, ''carried out the theory that defendant by the placing of a flare on the pile of sand on Division street, on the 18th day of June, 1939, knew, or, in the exercise of reasonable care, should have known that the flare when lighted would be likely to attract children in the vicinity and cause injury by burning one or more of them, and it was then its duty to guard against such a situation'' and that the instruction told the jury ''that the placing of these flare lights was known or should have been known to the defendant as negligence, and that it would be responsible for injury occasioned through it, unless it then performed another

duty to guard the flare situation so that no one could come in contact with it, or approach it.''

Defendant complains that instruction No. 11, supra, ''tells the jury that the allowing and permitting of burning flares on Division street during the daylight hours of June 18, 1939, by the defendant would be likely to attract children and likely to injure one or more of them by burning.''

When read in connection with the other instructions given and considered in the light of the evidence introduced in this cause, we do not find either of the above instructions objectionable.

It is a matter of common knowledge that in residential districts of cities ''children play in the streets and are attracted * * * by sand piles.'' Morse v. Douglas, supra. In Best v. District of Columbia, 291 U. S. 411, 54 S. Ct. 487, 490, 78 L. Ed. 882, the Supreme Court of the United States said that, ''.'it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult.' * * * Here, on the face of the opening statement, the location of the wharf, unfenced, close to the street with the barrier partly down, taken with the use of the wharf for unloading sand, made it a likely place for children to play. Sand piles close at hand would constitute 'a bait' they would inevitably follow. * * * they did follow it, and they used the wharf as a playground at their· pleasure. As the authorities of the District had reason to anticipate that use, there was a duty to take reasonable precautions either to prevent it or to keep the wharf in such a proper state of repair that children would not be exposed to the danger of falling through holes.''

It is also a matter of common knowledge that children are attracted by fire and that fire in the hands of children is a dangerous agency which is the reason for the rule that, ''One kindling a fire at a place where children are likely to be must exercise care to protect them from injury.'' 45 C. J., sec. 276,

p. 855. "Always and everywhere since the beginning of civilization with men's discovery of the means of producing fire, it has been regarded as a dangerous as well as a beneficent agency, to be handled with care." Piraccini v. Director General of Railroads, supra. See also Schmit v. Village of Cold Springs, supra; Ackeret v. City of Minneapolis, 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D, 1111, Ann. Cas. 1916E, 897; Long v. City of Dunkirk, 260 N. Y. 599, 184 N. E. 109; Grayhek v. Stern, 154 Ill. App. 385; Valenti v. Blessington, 96 N. J. L. 498, 115 A. 377; Ross v. Chester Traction Co., 224 Pa. 86, 73 A. 188; Escanaba v. O'Donnell, 6 Cir., 212 F. 648; Maher v. Magnus Co. Inc., 1 N. J. Misc. 469, affirming 99 N. J. L. 514, 123 A. 868; Spenzierato v. Our Lady Monte Virgine Soc. of Mut. Ben., 112 N. J. L. 93, 169 A. 831; Sarno v. Gulf Refining Co., 99 N. J. L. 340, 124 A. 145; Carr v. Southern Pennsylvania Traction Co., 253 Pa. 274, 98 A. 554; McDermott v. Consolidated Ice Co., 44 Pa. Super. 445; Roman v. Leavenworth, 90 Kan. 379, 133 P. 551; Id., 95 Kan. 513, 148 P. 746.

The liability of the defendant city grows out of its responsibility for a dangerous agency. The test is whether the injury to plaintiff or to a class of which the plaintiff was one ought reasonably to have been anticipated. "It is not necessary, in order to impose this duty, that injury should be inevitable, that the danger thereof should be great, or even that the chances of injury should exceed the chances of absence of injury; but it is sufficient that injury is likely or reasonably probable." 45 C. J., p. 657. When an instrumentality has a recognizable potentiality for harm to human beings, he who controls that instrumentality must resort to every reasonable measure to eliminate or reduce that potentiality or respond in damages to anyone injured by it, if the injured person is without fault. A lighted flare with an open flame permitted to be and to burn in the daytime on a public street in a densely populated residential part of a city where children of tender years are known to habitually gather to play has a potentiality for harm to human beings and particularly to children. Not only does

human experience establish this fact but the regularly employed watchman on the project, defendant's witness Arthur E. Johnson, testified that he knew the flares "were dangerous to work around or play around" while Dr. Joesting testified that "fire is definitely attractive to all children." The city maintains and controls its streets and the evidence clearly established that the city controlled the burning flare. The accident occurred on a warm, bright, sunny, Sunday afternoon in June, hours before sunset when it should have been anticipated that children would be at play on Division street. The defendant could have eliminated the danger to plaintiff by extinguishing the flare during the daylight hours of the day of the accident. Witnesses for defendant testified that the common practice in and around Butte was to set the flares "up just before dark in the evening and to extinguish the flares in the morning." This common practice the city neglected to follow. It neglected to extinguish, on June 18, 1939, the flares on Division street which it had lighted the previous evening.

The child was rightfully on the street at the time of the accident. At that time of the day the burning flare not only served no useful purpose but it was a nuisance. The ridge of sand rising to a height of two or three feet was certainly more noticeable in the daytime than a small flare lamp measuring 8 or 10 inches in diameter and intended to serve as a warning signal at night.

In our opinion under the evidence in this cause the jury was warranted in finding that what did happen could readily have been anticipated by the city's officers, agents and servants.

The trial of the case being free from error the judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Morris, Angstman and Cheadle concur.