CARRIE KEMERER v. MARTIN MOCK AND ANOTHER.[1]

November 27, 1936.

Nos. 30,897, 30,975.

[1]Reported in 269 N. W. 832.

*Cobb, Hoke, Benson, Krause & Faegre* and *Phillips & Sherwood,* for appellant B. T. Kemerer.

*Atwood & Quinlivan,* for appellant Martin Mock.

*Charles H. Richter,* for respondent.

HOLT, JUSTICE.

Defendants separately appeal from the judgment, their separate motions for judgment notwithstanding the verdict or a new trial having been denied.

Shortly after seven o'clock on the evening of December 8, 1934, automobiles owned and driven by defendants collided at the intersection of Fourth avenue and Fourth street south in the city of St. Cloud, in which collision plaintiff, a guest passenger in defendant Kemerer's Studebaker sedan, claims to have been injured. The defendant Mock's car was a Plymouth sedan. As far as the testimony discloses, both cars had efficient brakes and had proper headlights burning. The Studebaker was being driven north on the easterly side of Fourth avenue, a 36-foot street between curbs, and the Plymouth was going south on the westerly side of the avenue, the driver intending to turn east on reaching Fourth street, which is 30 feet between curbs and intersects the avenue at right angles. It was a cold night, and there was ice and hard snow on the streets. The front right corner of the Studebaker struck the Plymouth just back of its right front fender, and the cars came to rest at the northeast corner of the intersection, where the left running board of the Plymouth contacted an electric light post, and the left front

wheel was caved in by the curb. The Studebaker, on being shoved back from the contact with the Plymouth by man power, was driven away on its own power. Each driver testified as to the care with which his car was driven and as to how he observed the approaching car and its operation. It may be said that each driver maintained that he used due care and that the collision was due to the negligence of the other. After an attentive examination of the evidence the conclusion is reached that the trial court did not err when the alleged negligence of each was submitted to the jury. The icy condition of the streets, considering that it was a cold night, did not cause or contribute to the collision. It could not well be said to have been an unavoidable accident as when cars on glare ice and a slanting surface respond neither to the steering wheel nor to the brakes. The streets had no perceptible grade. There were no so-called blind corners. If the drivers had been attentive they should have observed each other as they approached with proper headlights lit. So the jury could readily arrive at the conclusion that the collision was due to the negligence of one or both. Although defendant Mock testified that in approaching and turning east into the intersection he did not exceed eight miles an hour and extended his left arm outside for more than the required distance before turning, the jury could find that he was negligent in not ascertaining that he could cross the path of the oncoming Studebaker safely, knowing that the driver of the latter could not see the extended arm when the Plymouth was turning to the left, 1 Mason Minn. St. 1927, §§ 2720-16, 2720-17. The evidence is also such that the jury could conclude that Mock cut the corner and was hit on the north half of Fourth street. The jury could also find that defendant Kemerer was negligent in not observing the approach and course of the Plymouth more closely. If Mock cut the corner the turn of the Plymouth headlights should have advised Kemerer of its crossing his path in time to avoid the collision had he been going at a proper speed. And, considering the icy condition of the streets and the character of the locality, the jury could conclude that the speed of the Studebaker, though less than 20 miles an hour on approaching the intersection, was more than reasonable. As a matter

of law, neither defendant was entitled to a directed verdict or to judgment notwithstanding the verdict. There is evidence from which the conclusion could be drawn that both violated § 2720-4(a) of the code reading:

"Any person driving a vehicle on a highway shall drive the same at a speed not greater than is reasonable and proper, having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing."

There are other provisions of the statutes given to the jury touching the driving of a motor vehicle on the highways which the jury could find had been transgressed by either or both defendants; but it is not deemed necessary herein to call attention thereto. Neither defendant is entitled to judgment notwithstanding the verdict.

Plaintiff insists that defendant Kemerer's appeal should be dismissed for the reasons that (a) in his motion for judgment or new trial Mock was not made a party, nor in the notice of appeal to this court; and (b) that there is no proper settled case. The files show a joint judgment against defendants from which each has appealed. All the parties are before us, and it seems to us that plaintiff cannot successfully urge that Kemerer's appeal be dismissed because his codefendant was not served with notice of appeal. It is plaintiff's judgment against Kemerer which is attacked by Kemerer's appeal. Of course the proper procedure should have been for each defendant, since he appeared by a separate attorney, to give notice of every step to every party to the suit. But we fail to see wherein plaintiff, duly served, may claim advantage because Kemerer neglected to serve notice of his motion and of his appeal upon his codefendant.

Defendant Mock assails the judgment as excessive on this appeal. Defendant Kemerer does not. However, in their separate motions for judgment *non obstante* or a new trial each assigned as ground for a new trial the excessiveness of the verdict. The judgment is joint and is based upon the one verdict. If the verdict is in fact excessive we do not see how the judgment based thereon can stand, even if one of the judgment debtors, on the appeal, refrains from

assigning error on that ground. So we must determine whether or not the verdict is excessive. In their motions for new trial each defendant assigned as grounds that the verdict was excessive, appearing to have been given under the influence of passion and prejudice, and also as not supported by the evidence and contrary to law. Thus the amount of the verdict is attacked under both subds. 5 and 7 of 2 Mason Minn. St. 1927, § 9325. We see nothing in the record indicating that passion or prejudice could have influenced the jury in fixing the amount of the verdict. But we conclude that the evidence does not sustain such a recovery as here awarded. There were three medical experts, Doctors Freeman, Lewis, and Kern. Dr. Freeman took some X-rays, one the day after the collision and one in February thereafter. Dr. Kern testified only as an expert reader of X-rays. Dr. Lewis was plaintiff's attending physician. The X-ray of the day after the accident, as well as the X-rays taken later, reveals the fact that the second and third cervical vertebrae were injured previously so as practically to be united by bony callous that nature throws out for the protection of a fractured or diseased bone. And plaintiff freely admitted that her neck was injured in October, 1933, when her car in which she was riding, her maid driving, ran off the road and into a ditch. She also testified that she had not recovered full movement of her neck when this last accident occurred. Dr. Lewis testified that she suffered a nervous shock from the last accident, and there may have been some disturbance in the healing process of her former neck injury that gave her considerable pain for some weeks, and also discomfort when she was prevailed on to wear a cast support or collar for her neck. However, Dr. Lewis was of the opinion that she would fully recover from the result of the accident here involved in a few additional months after the trial, which occurred five months and a week after her last injury. Her symptoms are all subjective. She is now doing some of the work she did before. She travels in an automobile without any apparent discomfort. The medical testimony does not indicate any permanent injury. The prognosis is for a complete recovery in a very few months. In that situation we conclude that the evidence does not

justify a verdict of $5,000. If such verdicts are to be sustained for temporary suffering and pain, what verdicts are to be given for loss of limb or permanent injury to health? We think that there should be a new trial unless plaintiff consent to reduce the verdict to $3,500.

It is therefore ordered that the judgment be reversed and a new trial awarded unless plaintiff within. 20 days after the going down of the remittitur file a consent in the court below to a reduction of the verdict to $3,500 and a modification of the judgment accordingly.

