KENNETH SMITH v. OTTO HENDRICKSON POST 212,
AMERICAN LEGION, AND ANOTHER.
VIRGIL SMITH v. SAME.[1]

January 15, 1954.

Nos. 36,076, 36,077, 36,095, 36,096.

[1]Reported in 62 N. W. (2d) 354.

*Carroll & Thorson*, for appellant Otto Hendrickson Post 212, American Legion.

*Sexton, Tyrrell & Jardine*, for appellant Lampert Lumber Company.

*Bradford & Kennedy* and *Rosengren & Rufer*, for respondents.

NELSON, JUSTICE.

Kenneth Smith, a minor, was injured on December 20, 1950, when sliding down a chute located on premises owned by Otto Hendrickson Post 212, American Legion, a corporation, and Lampert Lumber Company, a corporation. He lacked ten days of being in his tenth year. Actions were commenced by the minor through his father and natural guardian to recover for his injuries, and by Virgil Smith on his own behalf, for consequential damages to which he might be entitled as father of the minor. The two cases were consolidated for purposes of trial and are submitted as a single case on this appeal. Verdicts were rendered by the jury in favor of plaintiffs against both defendants on December 14, 1951. Judgments were entered pursuant thereto, and both defendants appealed from the judgments.

For the sake of brevity we will hereinafter refer to Kenneth Smith, the minor plaintiff, as Kenneth; to his father, also a plaintiff, as Virgil Smith; to defendant Otto Hendrickson Post 212, American Legion, as Legion; and to defendant Lampert Lumber Company as Lampert.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear to be as follows:

Legion and Lampert owned adjoining premises in the village of Park Rapids, Hubbard county, Minnesota, Legion being the owner of lot 20 of block 2, and Lampert being the owner of lots 21, 22, and the south half of lot 23, all in block 2 of the same addition. The Lampert lumberyard and buildings were north of the building owned and partially occupied by the Legion. The buildings faced a street on the west, and there was an alley in the rear of the lots. The Legion building was 25 feet in width and 140 feet in length and it was set in from the edge of lot 20 adjoining lot 21 by five inches. Legion occupied the second floor of the Legion building. This second floor was only 60 feet long, opening on 80 feet of roof area at the back. The Lampert building was shorter than the Legion's by approximately 40 feet. It was located approximately two feet north of the lot line between lots 20 and 21, although the front of the building, on the west, extended to within three inches of the Legion building because of a false front. This two-foot strip on the south side of Lampert's lot was occupied by a concrete gutter running toward the alley, and the eaves on the south side of the Lampert building also projected over this area to within six inches of Legion's north wall.

In March 1948 Legion built a chute on its north wall, approximately one and one-half feet wide and 38.3 feet long, consisting of a sloping portion of 31 feet and a level portion at the bottom of seven and three-tenths feet, ending four feet above the ground level in the alley. The chute, which was not enclosed, was lined with overlapping galvanized metal. The chute was supported by five uprights on each side, each consisting of two two-by-fours nailed together. These supports were not sawed off even with the sides of

the chute, but protruded above the sides. On the south side of the chute was the brick wall of the Legion building; on the north was a woven-wire and barbed-wire fence at the edge of Lampert's concrete loading platform, with bricks piled up against the fence and leaning against the chute. The major portion of the chute consisting of one foot, nine and three-tenths inches was on Lampert property.

Plaintiffs contend that the chute was built to facilitate the removal of beverage cases from the Legion club to the alley. Legion, however, maintains that it was constructed for use as a fire escape. Whatever its original purpose, the evidence reveals. that the deputy state fire marshal refused to recognize the chute as a fire escape and ordered the construction of an open stairway on the south side of the Legion building, which was completed two weeks after the chute had been constructed. Furthermore, the evidence shows that the chute was rarely used by Legion in removing beverage cases, the new stairs proving more satisfactory for that purpose. In spite of this, however, the chute was left in position.

Both the chute and the stairs were open and unenclosed, with no warning signs to children or trespassers on either roof, chute, or stairs.

From the time of construction of the chute in 1948 to the date of the accident in December 1950, children of the approximate age of Kenneth were playing on and sliding down the chute. Sometimes the children would climb the stairway on the south side of the Legion building, cross the roof and slide down the chute; sometimes they would climb the chute itself and then slide down. To speed the descent during the winter months the boys would often either throw snow on the chute or sit on a cardboard or shingle with snow beneath. Some of the boys played on the chute daily—on the way to school, at noon, and after school. The record indicates that Legion and Lampert employees, as well as the resident across the alley, had repeatedly warned the boys to stay away from the chute and that Lampert employees had at times chased the boys away.

Plaintiff Kenneth was seen sliding down the chute on December 20, 1950, at about 12:30 p. m., during the noon hour. The record indicates that he lost his balance when he reached the center of the chute and swirled around striking his head on some of the supports extending above the edge of the slide on the remainder of the descent. Plaintiff Virgil Smith testified that, on examining the chute after being notified of Kenneth's injuries, he found the top layer of the brick pile scattered and a tuft of hair on one of the bricks. There is nothing in the testimony to indicate that Kenneth had ever been on the chute before the day of the accident or that his father had had any knowledge of the existence of the chute.

The trial court submitted both cases to the jury on the theory of negligence and left it to the jury to determine whether either or both defendants were negligent and whether Kenneth, a boy of approximately ten years of age at the time of the accident, was himself contributorily negligent. The defendants each moved for judgment notwithstanding the verdict in each case and such motions were denied. The only questions involved in these appeals are whether there is sufficient evidence to justify the jury's determination that defendants were guilty of negligence and that such negligence was a proximate cause of plaintiff's injuries, and whether the plaintiff Kenneth was guilty of contributory negligence as a matter of law. The instructions of the court are unchallenged.

■ The trial court submitted these cases to the jury according to the rule found in Restatement, Torts, § 339, that a possessor of land is liable for injuries to trespassing children where:

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This has been the rule in Minnesota since the year 1935. See, Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194; Middaugh v. Waseca Canning Co. 203 Minn. 456, 281 N. W. 818; Weber v. St. Anthony Falls Water Power Co. 214 Minn. 1, 7 N. W. (2d) 339; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Ewing v. George Benz & Sons, 224 Minn. 508, 28 N. W. (2d) 733; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Chase v. Luce, 239 Minn. 364, 58 N. W. (2d) 565; Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361.

It appears from the charge that the court in stating the rule of Restatement, Torts, § 339, used the term "owner" of land, rather than "possessor." But at the close of the charge the court stated:

"Further it has been called to my attention I have used the word 'owners' in referring to real estate involved in this litigation. That word may be taken and shall be taken by you as to include the possessors of real estate who may be occupying it in some other form rather than owners."

The defendant Lampert contends that it cannot be held liable because it was not a possessor of land as that word is defined in Restatement, Torts, § 329. Plaintiffs contend that there is no merit in this contention because the particular issue was never raised in the trial court and that, since Lampert failed to make objection to the court's instruction as to liability of a property "owner" under Restatement, Torts, § 339, that instruction became the law of the case. Furthermore, plaintiffs maintain that under the pleadings and the evidence Lampert was a possessor of land within the usual rule governing liability in cases of this type.

Defendants did not object to the instruction given and made no motion for a new trial because of any error in the instructions. See,

Rule 51 of Rules of Civil Procedure. Under such circumstances the trial court's charge, even though it be erroneous, becomes the law of the case and whether the verdict is sustained by the evidence is then determined by application of the rules of law laid down in the charge. Bullock v. New York L. Ins. Co. 182 Minn. 192, 233 N. W. 858; Farnham v. Pepper, 193 Minn. 222, 258 N. W. 293; Fidelity & Cas. Co. v. Minneapolis Brg. Co. 214 Minn. 436, 8 N. W. (2d) 471; Kane v. Locke, 218 Minn. 486, 16 N. W. (2d) 545, affirming Kane v. Locke, 216 Minn. 170, 12 N. W. (2d) 495; Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Ellingboe v. Guerin, 228 Minn. 211, 36 N. W. (2d) 598; Rogge v. G. N. Ry. Co. 233 Minn. 255, 47 N. W. (2d) 475; 1 Dunnell, Dig. (3 ed.) § 404.

■ The circumstances of this case indicate that Lampert is liable even if required to be a "possessor." M. S. A. 500.07 provides:

"An estate in possession is where the owner has an immediate right to the possession of the land; * * *."

The chute was erected in 1948 and had been in existence almost three years when the accident in question occurred. There is nothing in the record to indicate that it came into existence by lease, prescription, or otherwise than by sufferance. Even if Legion were considered to have obtained a right of prescriptive easement, such a right does not carry with it title to or right of possession of the land itself. Lustmann v. Lustmann, 204 Minn. 228, 283 N. W. 387; Romans v. Nadler, 217 Minn. 174, 14 N. W. (2d) 482.[2] The existence of this chute on Lampert's land constituted no more than an encroachment, which the owner of the land and possessor, Lampert, was legally entitled to remove by its own action as in the case of any other private nuisance. 1 Am. Jur., Adjoining Landowners, § 18. We must conclude from the record in this case and the applicable law that Lampert qualifies as a possessor of the land in

[2]See, Norton v. Frederick, 107 Minn. 36, 119 N. W. 492; Country Homes Land Co. v. DeGray, 71 N. J. Eq. 283, 71 A. 340; McMillian v. Lauer, 24 N. Y. S. 951; Koenigs v. Jung, 73 Wis. 178, 40 N. W. 801; 17 Am. Jur., Easements, §§ 96, 100; 28 C. J. S., Easements, §§ 73, 74.

question upon which the chute was partially located.

◼ Since it appears that Lampert could have forced Legion to remove the chute from its property at any time, Lampert, as owner of the major portion of the land on which the chute was located, can be held liable for injuries resulting from the chute. An owner of property may be held liable for an injury not only where it was caused by negligent acts of persons upon the premises over whose acts he exercises control, but also where it was caused by an act connected with the property which he permitted another to do or by a dangerous condition of the premises which he permitted another to create. Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N. W. 698; 65 C. J. S., Negligence, § 92. In order to charge one with liability, it is not necessary that he should have created the dangerous condition himself; the owner or person in charge may be held liable for injury resulting from his failure to safeguard a dangerous condition created by others with his knowledge and consent. Foster v. Lusk, 129 Ark. 1, 194 S. W. 855; 65 C. J. S., Negligence, § 29(7).

There is little merit to Lampert's argument that it did not realize that the chute was partially located on its property. The fact that the west wall of the Lampert building extended across this two-foot space between the Lampert building and the Legion building, coupled with the fact that Lampert's eaves extended to within six inches of the Legion building, indicates that Lampert must have regarded itself as possessing some property right to that area. Furthermore, Lampert admitted fee ownership of the entire lot 21 and therefore is presumed to know the true location of its boundaries. 2 C. J. S., Adverse Possession, § 215d.

◼ Liability of both Lampert and Legion is based on the rule set out in Restatement, Torts, § 339. At the conclusion of the trial defendants each moved for judgment *non obstante*. It is the rule in Minnesota that by making such a motion a party admits the credibility of the evidence presented by the adverse party and every inference which can be fairly drawn from such evidence. Fredrickson v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 277 N. W. 345.

Considering the evidence with this rule in mind, it appears clear that the four tests enumerated in said § 339 were found to be satisfied by the jury and that the evidence sustains the finding.

There is no doubt that the defendants knew that children of plaintiff's age were trespassing on the chute—the fact that employees of both Lampert and Legion had repeatedly warned the boys to keep away, and occasionally had chased them away, conclusively establishes this. The testimony of witnesses indicating that children were warned to stay away from the premises because of the danger involved would seem to justify the jury's determination that the defendants should have realized that the condition involved a foreseeable unreasonable risk of serious bodily harm to trespassing children. The setting in which the chute was located, coupled with the presence of the uprights extending above the sliding surface, further substantiates this point. Furthermore, the jury's determination that Kenneth did not realize the risk involved by his intermeddling is not unreasonable in the light of the evidence presented, particularly since there was no evidence indicating that Kenneth had ever played on the chute prior to the date of the accident. The utility to Legion of maintaining this chute was apparently negligible, and the removal of the object, while not seriously inconveniencing Legion, would have removed the risk from this artificial condition. See, Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194; Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361. Of course, Lampert made no use of the chute whatsoever. The verdicts, therefore, constitute a clear determination that defendants were guilty of negligence in allowing such a dangerous condition to remain on their property. The court clearly instructed the jury as to liability under Restatement, Torts, § 339. It has been repeatedly stated by this court that a jury determination that the four conditions to the restatement doctrine are present implicitly determines that the defendants had not exercised the required degree of care. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18;

Schmit v. Village of Cold Spring, *supra;* Doren v. Northwestern Baptist Hospital Assn. *supra.*

In view of the age of Kenneth, the court was justified in submitting the question of his contributory negligence to the jury, and the jury was warranted in finding that Kenneth did not fall short of that degree of care which other children of his age, education, and experience would exercise under the same or similar circumstances.

The satisfaction of each of the elements required for liability under the restatement rule in these cases was a proper question for a jury, and there is sufficient evidence to sustain the verdicts.

Affirmed.

Mr. Chief Justice Dell took no part in the consideration or decision of this case.