## RICHARD N. DAVIES v. LAND O' LAKES RACING ASSOCIATION AND OTHERS.
## FREEBORN COUNTY AGRICULTURAL SOCIETY, RESPONDENT.[1]

April 1, 1955.

No. 36,410.

[1]Reported in 69 N. W. (2d) 642.

William P. *Sturtz* and *Meighen, Sturtz & Peterson,* for appellants.
*Floyd V. Nichols* and *Nichols & Tuveson,* for respondent Davies.
*Joseph R. Gunderson* and *Gallagher, Madden & Zimmerman,* for respondent Freeborn County Agricultural Society.

NELSON, JUSTICE.

Richard N. Davies, trustee of the estate of and father of Thomas D. Davies, decedent, brought this action in the district court of Freeborn county against the Land O' Lakes Racing Association; Arthur Dutcher and Harold Dutcher, its managing officers; and the Freeborn County Agricultural Society to recover damages resulting from the accidental drowning of Thomas, a minor, in a drainage pit constructed as a catch basin by defendant racing association on the Freeborn county fairgrounds. The defendants, at the close of plaintiff's testimony and again at the close of all the testimony, moved for a directed verdict in their favor. These motions were denied. The jury returned a verdict for the plaintiff in the sum of $4,000 against the defendant racing association and Arthur and Harold Dutcher

and a verdict in favor of defendant Freeborn County Agricultural Society. The defendants Land O' Lakes Racing Association and Arthur and Harold Dutcher then moved the court in the alternative for judgment notwithstanding the verdict or a new trial. The motions were denied and these defendants appeal therefrom. The rule in this state is that a motion for judgment notwithstanding the verdict will be granted only when the evidence is conclusive against the verdict. Trovatten v. Hanson, 171 Minn. 130, 213 N. W. 536; Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380, and cases therein cited.

Resolving all conflicts in favor of the prevailing party below, the following appear to be the facts: On May 4, 1953, the Land O' Lakes Racing Association, a Wisconsin corporation, then operating a number of one-fifth mile race tracks in Wisconsin, Michigan, and Minnesota, leased a portion of the fairgrounds from the Freeborn County Agricultural Society and within a few days began constructing one of its race tracks thereon. All its race tracks are operated on leased land, and in each instance the construction conforms to a standard uniform design. The racing association engaged the services of Emil Olson & Sons, road contractors, to construct the track, and they began work May 10, 1953.

An accident occurred on the leased premises on May 25, 1953, when plaintiff's decedent died by drowning in one of two pits or catch basins constructed upon the leased premises by the defendant racing association to afford proper drainage to its track. The pits were dug about ten feet square and six feet deep with perpendicular sides. They were part of the track construction at each of the oval ends near the inner edge of the track. The track itself, which had not been completed at the time of the fatal accident, was about 50 feet wide. At the oval ends, it was built so that the outer edge was raised two feet above the track and the inner edge two feet below it, giving a pitch of four feet. It was located inside the regular one-half mile track in front of the grandstand which the fair board maintained. The track had a dirt surface, and, since it was necessary to keep it dry, these pits or catch basins were constructed and connected to the track with ditches which afforded necessary drainage

in case of rains. The earth removed in the construction of the catch basins was not left on the edge of the pit but was utilized in the construction of the track. Water accumulating on the track would flow into each of these pits through short ditches, each about two feet wide. Water accumulating in the catch basins had to be pumped out onto the flat ground. Nothing was done to cover the pits or to guard them in any way. Following the time the lease was made the Dutcher brothers had spent some four days on the grounds during the period of construction. The drainage pits, which were constructed according to the standard design of their race tracks, were familiar to them in placement and location. The construction of the track and installation of the lighting facilities had not been completed on May 25, 1953.

The fairgrounds are located to the north of the city of Albert Lea in Freeborn county. There was some conflict in the testimony regarding the custom of children playing on the fairgrounds and about the race track. The Dutcher brothers and some of the employees constructing the track testified that they did not see any children in the area, but there was ample testimony to the effect that children did play there frequently; that it was common especially after school; that they would play games and otherwise move about the grounds; and that they played in the infield which is the race track area. It appears from the testimony that it was more or less impossible to keep the children out of the grounds. The testimony indicates that the gates were often left open about the fairgrounds and also the race track and that children frequented the track area. Defendants Dutcher, while denying that they had any direct knowledge of children frequenting this area to that extent, yet in effect admitted that fairgrounds and race track area were commonly frequented by children and that this was within their knowledge.

There was a very heavy rainfall in the Albert Lea area on the night of May 24 and 25, 1953, and this resulted in there being pools and puddles of water all over the fairgrounds on May 25, the day of the drowning. There was water on the race track, half way around, on each side. There was an accumulation of from 18 inches to two feet of water on the track toward the inside edge on the oval ends. Plaintiff's decedent, a child somewhere between five and six years

of age, was found drowned in one of the catch basins shortly after four o'clock in the afternoon. It does not appear from the record at the trial whether the decedent stepped or fell directly into the catch basin from dry ground or stepped into it from water overflowing its edges or from one of the small ditches connecting the pit with the race track. One of the defendants, Harold Dutcher, testified that he found a little boy's shoe next to the inside rail and about 15 feet from the opening leading to the catch basin and that tracks led up to the spot where the shoe was found and continued on up to the opening and into the channel between the race track and the catch basin.

The defendants, on appeal, assign as error the trial court's failure to direct a verdict in their favor pursuant to the rule of law announced by this court in Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735, 42 L. R. A. 288, and also the trial court's acceptance of Restatement, Torts, § 339, as the law applicable to the facts in the case. They further contend that the evidence does not support a finding of negligence or of proximate causation if there was negligence. They also contend that, if the verdict against them is sustained, the verdict for the defendant in favor of the Freeborn County Agricultural Society is not sustained by the evidence and is contrary to law. They assign as error the trial court's failure to charge the jury that the agricultural society had actual knowledge of the existence of the catch basin, and that because of such actual knowledge its liability was the same as the liability of the other defendants, should liability be established.

■ The trial court submitted this case to the jury according to the rule found in Restatement, Torts, § 339, that a possessor of land is liable for injuries to trespassing children where:

"(a)  the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b)  the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This has been the rule in Minnesota since the year 1935 when the conventional attractive-nuisance doctrine was discarded in this state. See, Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194; Middaugh v. Waseca Canning Co. 203 Minn. 456, 281 N. W. 818; Weber v. St. Anthony Falls Water Power Co. 214 Minn. 1, 7 N. W. (2d) 339; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Ewing v. George Benz & Sons, 224 Minn. 508, 28 N. W. (2d) 733; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Chase v. Luce, 239 Minn. 364, 58 N. W. (2d) 565; Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361; Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354. In the case of Smith v. Otto Hendrickson Post 212, American Legion, *supra*, this court held that the *owner* of property may also be held liable for injury to young children trespassing thereon resulting from his failure to safeguard a dangerous condition of the premises which he permitted another to create.

It was made clear in the Gimmestad case that this court had then reached the point where the phrase "attractive nuisance" indicated no special departure or exception from the ordinary run of negligence cases; that it had theretofore been but a convenient phrase to designate one type of case within the ordinary rule that one is liable for injury resulting to another from failure to exercise, for the protection of the injured child, the care due and commensurate with and therefore demanded by the circumstances—the greater the hazard the greater the care required—; and that nothing more is needed to support the proposition that one who maintains an artificial condition is liable for resulting injury to young children trespassing thereon if the possessor of land comes within the conditions

of Restatement, Torts, § 339. This court then said (194 Minn. 537, 261 N. W. 196):

"We conclude that the idea of invitation, express or implied, actual or factual, as condition precedent to liability in the case of young children injured as was the plaintiff here, should be finally and emphatically discarded. They are trespassers, but, because of their tender years and the consequent lack of perception and responsibility, liability results notwithstanding the trespass."

The defendants contend that Restatement, Torts, § 339, should not be applied to water hazards; that the danger in ponds and lakes or other bodies of water, whether natural or artificial, is objective; and that water is its own warning to children as well as adults. Furthermore, they contend that it is not practical to fence in water hazards since no fence has been devised which would be proof against trespassing children; that water hazards exist so generally and it is so difficult to keep children away from them that to impose liabilities on landowners for accidents that occur in them would impose an intolerable burden; that the defendants Dutcher and the racing association had no knowledge that children frequented the fairgrounds; and that this water hazard did not lure the Davies child onto the fairgrounds.

Inasmuch as it was common knowledge that children frequented the fairgrounds almost constantly and that there were numerous small children in the area located near the city of Albert Lea, and inasmuch as the testimony as a whole indicates that the defendants either had knowledge or ought to have had knowledge that children enter upon and play about fairgrounds, and did so here, entering through open gates, down fences or otherwise, a jury was justified in finding that defendants or their agents knew or should have known that children would be likely to trespass here in the manner of plaintiff's decedent. See, Heitman v. City of Lake City, *supra;* Schmit v. Village of Cold Spring, *supra;* Gimmestad v. Rose Brothers Co. Inc. *supra;* Weber v. St. Anthony Falls Water Power Co. *supra;* Chase v. Luce, *supra.* In view of the tender age of the child, the jury was warranted in finding that plaintiff's decedent did not discover or

realize the generally dangerous condition of the pools and puddles of water that surrounded, led up to, and covered the pits, permitting the child to walk in the water and step directly into a hole newly constructed with perpendicular sides where the water was more than six feet deep.

This appeal does not involve any question as to what the law is or what the law should be on this point, nor is there much, if any, dispute as to what the facts are. The holding in Stendal v. Boyd, *supra,* that a landowner was not liable for the drowning of a child in a body of water formed on his property in an abandoned stone quarry, is more or less in accord with Restatement, Torts, § 339, and in this appeal we are not called upon to choose between the rule of law in that case and the rule of law in § 339 which we have adopted. Paragraph (a) of that section makes it clear that in order for a possessor of land to be liable for injuries to trespassing children the place where the condition is maintained must be one upon which the possessor knows or should know that such children are likely to trespass. Paragraph (b) requires that in order to impose liability on the possessor of the land the condition he maintains must involve an unreasonable risk of death or serious bodily harm to such children. It is generally conceded that the ordinary body of water, even though it be artificial, while it does involve the risk of death or serious harm, does not constitute an unreasonable risk thereof because even a child to some extent appreciates the risks that are connected with it. See, Prosser, Torts, § 77, p. 622. Paragraph (c) makes it plain that it applies to those children who because of their tender years do not discover or are deemed incapable of discovering the condition or realizing the risk involved in intermeddling in it or in coming within the area made dangerous by it, and paragraph (d) sets forth the requirement that the utility to the possessor of maintaining the condition be slight as compared to the risk of young children involved therein. Thus, § 339 makes it clear that a possessor of land will not ordinarily be held liable for injuries occurring in ordinary, natural, or artificial bodies of water that are free from traps or concealments. Every case of this nature must necessarily stand or fall upon its own particular facts.

The major question in this case therefore concerns no more than the correct interpretation or evaluation of the undisputed facts and circumstances concerning this particular body of water. The jury under the charge of the court were told that the provisions of § 339 were applicable to the facts submitted, and they came to the conclusion by their verdict that this particular body of water in the state in which the pit was permitted to exist without protection or barricade under all the circumstances involved an unreasonable risk. The question presented is: Was there sufficient evidence upon which a jury could reasonably conclude that this body of water, in the state in which it was permitted to exist on the afternoon of May 25, 1953, was a danger to trespassing children of tender age greater than the danger present in the ordinary, open, natural, or artificial body of water? The jury resolved those questions in favor of the plaintiff. We believe that the circumstances and the evidence in this case combine to form a sufficient basis for the jury's finding that this particular body of water in its condition on the day in question involved more risk than an ordinary water hazard and amounted to a condition, created by defendants, involving an unreasonable risk of death or serious bodily harm to children within the meaning of Restatement, Torts, § 339.

There was evidence to the effect that the danger to children inherent in the drainage pits as constructed had been called to the attention of members of the fair board and had been called to the attention of one of the Dutcher brothers. Race tracks and fairgrounds combined are bound to intrigue children, and there was according to the evidence an additional element of attraction present in that horses were kept on the grounds near the race tracks. These facts, plus the additional facts of racing cars being brought to the grounds, are such as would justify the jury in finding that the defendants were aware of, or ought to have been aware of, the likelihood that children were and would likely continue to be trespassers from time to time on this area.

There are only two Minnesota cases which are somewhat similar to this one and they are: Harning v. City of Duluth, 224 Minn. 299,

28 N. W. (2d) 659, and Kohler v. W. J. Jennison Co. 128 Minn. 133, 150 N. W. 235. Both of these cases involved drowning of children. In the Harning case liability was imposed on the defendant city for the drowning of a four-year-old child in one of many holes steamed through the ice of a pond used by children for years for skating, the holes increasing in size by the flow of the water, which also created smooth, slippery slopes toward the holes. In the Kohler case this court refused to impose liability on the defendant company for the drowning of a child in its mill pond when the child fell through a hole in the ice near the end of a two-and-one-half-mile-long pond created by hot air from a blow pipe and covered and concealed by dust from this blow pipe. Children were accustomed for many years to use this pond for skating, and the defendant had made no attempt to guard this hole in the ice or to give any warning of it. The decision in the Kohler case insofar as it rested on the ground that the children were trespassers is no longer the law in Minnesota.

In actuality these two cases involve dangerous holes in ice over bodies of water and are not any more in point than any other type of concealed danger case. Cases that are squarely in point with the instant case are not to be found in Minnesota decisions. There are, however, decisions in other jurisdictions which are in point. In those cases liability has been imposed on the possessors of land for the drowning of children, whether trespassers or not, caused when they are wading in water beds, regarded as safe and to all appearances involving no more than the ordinary risks of a body of water, and then suddenly stepped off into a deep hole created or maintained by the defendant. Coeur d'Alene Lbr. Co. v. Thompson (9 Cir.) 215 F. 8, L. R. A. 1915A, 731 (boys wading in shallow pool of water surrounded by piles of sawdust on defendant's land suddenly step off into deep hole or well) ; Ide v. City of St. Cloud, 150 Fla. 806, 8 So. (2d) 924 (city maintaining bathing beach allowed deep hole in lake to remain unguarded) ; Dinnihan v. Lake Ontario Imp. Co. 8 App. Div. 509, 40 N. Y. S. 764 (dangerous hole in bathing beach) ; City of Altus v. Millikin, 98 Okl. 1, 223 P. 851 (city's failure to construct spillway which caused formation of a pond generally shallow

but containing a dangerous hole where excavations had been made); Denver v. Stutzman, 95 Colo. 165, 33 P. (2d) 1071 (child wading in Platte river, generally shallow but in some places knee deep, stepped into large hole dredged in the bottom of the river by defendant city); Sanchez v. East Contra Costa Irrigation Co. 205 Cal. 515, 271 P. 1060 (children playing at edge of irrigation canal held to have assumed risk of open and obvious danger incident to canal but not to have assumed risk of unknown, concealed, and unguarded danger incident to a large syphon constructed at one point in canal by defendant); City of Indianapolis v. Williams, 58 Ind. App. 447, 108 N. E. 387 (child wading in stream running through city in which children usually waded stepped into a large and deep hole caused by flow of water into stream from sewer constructed by defendant city).

We have not dealt thus far with the other assignments of error which involve a verdict in favor of defendant Freeborn County Agricultural Society. The points raised therein were not urged by the appealing defendants' counsel in the oral argument. It need only be pointed out with respect to these assignments that an appellant may not assign error affecting other parties but may assign only error that is prejudicial to him. In re Estate of Wilson, 223 Minn. 409, 27 N. W. (2d) 429; 1 Dunnell, Dig. (3 ed.) §§ 360 and 419a. That defendants on appeal cannot question the dismissal of an action against a codefendant in whose favor a verdict has been returned and against whom appellants have asserted no claim is well established by Erickson v. Northland Transp. Co. 181 Minn. 406, 232 N. W. 715; see, Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31. There is to be found in the testimony of the defendant Arthur Dutcher the statement that in his conversation with members of the fair board prior to construction he did not advise them of the necessity of, or the practice of constructing, catch basins to facilitate drainage and that the board had no part in either design or construction.

The record does not disclose a request to the court for an instruction to the jury that the agricultural society had actual knowledge of the catch basins nor was there any exception or objec-

tion taken to the charge given although the trial court asked if there were any omissions at the end of its charge. These points were not raised in the motion for a new trial below. If objection is not made at the trial to an error in the instructions with respect to fundamental law or controlling principle, it must be assigned as error in the motion for a new trial before it can be presented to this court on appeal. Rule 51 of the Rules of Civil Procedure; 2 Youngquist & Blacik, Minnesota Rules Practice, p. 555. We must conclude that defendants are not now in a position to complain that the trial court failed to give the proper instruction on the latter points. See, Walker v. Stecher, 219 Minn. 152, 17 N. W. (2d) 317; In re Improvement of Co. Ditch No. 1, Yellow Medicine Co. 241 Minn. 6, 62 N. W. (2d) 80.

We conclude that the evidence in the instant case presented fact questions for the jury's determination and that there was ample evidence to sustain the jury's verdict in favor of the plaintiff.

Affirmed.

MR. JUSTICE FRANK T. GALLAGHER took no part in the consideration or decision of this case.