# DONNA KNOX, BY J. E. KNOX, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. CITY OF GRANITE FALLS.[1]

May 27, 1955.

Nos. 36,524, 36,525.

[1]Reported in 72 N. W. (2d) 67.

12

*Johanson, Winter & Lundquist* and *H. Clifford Lee,* for appellant.
*Baker & Carlson,* for respondents.

DELL, CHIEF JUSTICE.

Action for personal injuries sustained by Donna Knox, a minor, allegedly resulting from defendant's negligence, and an action by her father, J. E. Knox, for special damages. Defendant appeals from judgments in favor of the plaintiffs.

On May 16, 1953, Donna, who was then seven years of age, was severely burned by a kerosene flare set out by the defendant's employees as a warning device. For about a week prior to the accident the defendant had been engaged in constructing a water main

in the street in front of the Knox home in Granite Falls, Minnesota. A ditch approximately six feet deep and three feet wide had been excavated as a part of the project, and barricades and flares were set out at the ends of the excavation to protect the public. The flares involved were of a type frequently used in construction work, consisting of a round bowl eight inches high with a flat bottom. A heavy, round wick at the top of the bowl burned fuel oil or kerosene, the flame being exposed and unprotected. The flares were lit by the workmen just before dark and extinguished shortly after their arrival at the project in the morning, which was usually about 8:15 a. m. On the day in question, Donna went outside to play sometime prior to 8 a. m. It was a warm, sunny day, and she wore a dress and sweater. She called to Ronald Saeger, a seven-year-old neighbor boy, to come out and play, which he did. Donna had some used film and, despite a warning from Ronald not to play with the fire and that "she was going to get hurt there," she burned the film over one of the open flares. The flare in question was located about two houses away from the Knox home. There was no evidence indicating that it was defective in any way. Apparently, as Donna turned around to go home, her dress caught on fire from the flare, and she ran into her house. Her mother extinguished the flames, and a doctor was called who arrived at approximately 8:15 a. m. He immediately took Donna to a hospital where she was treated for burns on her buttocks, back, thigh, and abdomen, some of which were third degree. She was confined in the hospital for over two months, during which time she underwent three skin drafts.

Although on the outskirts of town, the vicinity in which the construction work was being done was primarily a residential area. Thirty-two children under the age of 10 years lived in the 20 homes located within a two-block radius. The men working on the project were aware of the fact that children played around the excavation site and had frequently warned them to stay away. Both of Donna's parents were cognizant of the excavation and the type of flares used, and Mrs. Knox had warned Donna to stay away from this particular excavation. Mr. Knox, who on the day of the accident left for work at approximately 7 a. m., testified, although somewhat equivocally,

that he had also warned Donna to stay away from the excavation and the flares. Prior to the accident none of the residents had made any complaints to the defendant or its employees concerning the use of the flares.

■ The applicable principle of law governing cases of this type has become well established in this state, and it would be superfluous to again set out its historical development.[2] It is clear that a municipality owes a duty of care to children using the streets for recreation and play,[3] and is liable for injuries to children caused by an artificial structure or condition maintained on the streets if:

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[4]

Defendant's primary contention is that, as a matter of law, it was not guilty of actionable negligence. In its memorandum the trial court stated that it was compelled to submit the issue of defendant's negligence to the jury by virtue of our opinion in Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325,

[2]See, Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642; 32 Minn. L. Rev. 526.

[3]Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; Barrett v. Village of Princeton, 135 Minn. 56, 160 N. W. 190; see, Annotation, 154 A. L. R. 1330, 1332.

[4]Restatement, Torts, § 339. These tests were adopted by this court in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194, to replace the conventional attractive-nuisance doctrine and the misconceptions inherent in it.

in which case we sustained recovery on behalf of a child for personal injuries caused by an open flare placed as a warning in front of an excavation on a municipal street. Both the trial court and the defendant have questioned the soundness of the Schmit opinion, and it is the defendant's position that, if that case is not now to be overruled, it should be strictly limited to its facts.

Of considerable significance in the Schmit case was the existence of the first condition to the imposition of liability, namely, knowledge on the part of the defendant that children were in the habit of playing around the open flares. In the instant case there is ample testimony to the effect that the children in the neighborhood frequently played near the excavation. The construction foreman testified that children "were quite attracted around there" and frequently had to be told to stay away. If the children were so persistent in playing in that area when the workmen were present, it is not unreasonable to assume that they would play there as frequently, if not more so, when no one was present to chase them away. Clearly, the jury was justified in finding that the defendant had or should have had knowledge of children playing near the excavation and in the immediate vicinity of the flares.[5] We must conclude that the instant case cannot be distinguished from the Schmit case on its facts.

The question remains whether our holding in the Schmit case that the defendant should not only have foreseen the presence of children around the flares but also should have reasonably anticipated some injury to them is sound. Certainly not every artificial condition that a municipality might maintain in its streets is likely to be so dangerous to a child as to warrant either its removal or the taking of precautions to thwart a child's intermeddling with it.[6] However, we are of the opinion that open flares of the type used in the instant case

[5] Cf. Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 54, 62 N. W. (2d) 354, 360; Chase v. Luce, 239 Minn. 364, 58 N. W. (2d) 565.

[6] For example, while the existence of an ordinary body of water usually involves the risk of serious bodily harm, in the absence of hidden or unusual dangers, it does not constitute an unreasonable risk. See, Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642; Prosser, Torts, § 77, p. 622.

do involve a risk of danger which a child might well not appreciate.[7] Defendant cites as controlling the case of Brown v. City of Minneapolis, 136 Minn. 177, 161 N. W. 503, where we held, as a matter of law, that the defendant city was not liable for injuries suffered by a two-year-old boy whose clothes were set afire by a lantern. That case has been distinguished elsewhere, and properly so, on the ground that there is a substantial difference between a glass-enclosed lantern and an open flare.[8]

Although not specifically mentioned in the Schmit case, our holding there was necessarily dependent upon a determination that the utility in using open flares was slight as compared to the risk involved. The municipality is, of course, obligated to maintain adequate warning devices to protect the public from excavations and other dangerous areas in the streets. In the case of Clark v. City of Bremerton, 1 Wash. (2d) 689, 696, 97 P. (2d) 112, 115, relied upon by the defendant here, the court concluded that "The utility of the lights in guarding the ditch outweighed the danger of their use." We are of the opinion that this conclusion, at least as applied to the facts of the instant case, is unsound. Obviously there is no necessity for maintaining illuminating devices during daylight hours.[9] However, we need not consider the question of whether the defendant here failed to extinguish the flares within a reasonable time after daybreak. Regardless of the time of day involved, where the municipality can reasonably use types of warning devices that do not involve the danger inherent in open flares, there is little if any utility in maintaining the latter.[10] We are not impressed by defendant's argument that a safer warning device is not available. It is common knowledge that there are other devices, such as glass-enclosed flares or battery-

---

[7]Accord: Gilligan v. City of Butte, 118 Mont. 350, 166 P. (2d) 797; O'Bier v. Manufacturers Cas. Co. (La. App.) 70 So. (2d) 220; cf. Collins v. City of Chicago, 321 Ill. App. 73, 52 N. E. (2d) 473. Contra: City of Grand Junction v. Lashmett, 126 Colo. 256, 247 P. (2d) 909; Clark v. City of Bremerton, 1 Wash. (2d) 689, 97 P. (2d) 112.

[8]See, O'Bier v. Manufacturers Cas. Co. (La. App.) 70 So. (2d) 220, 223 to 224.

[9]See, Gilligan v. City of Butte, 118 Mont. 350, 166 P. (2d) 797.

[10]See, Restatement, Torts, § 339, *comment f.*

operated lights, which offer a considerably less dangerous yet equally effective means of providing a warning. Clearly the danger in using open flares can be obviated when the circumstances warrant without any onerous burden or undue inconvenience being placed upon the municipality.

We have carefully re-examined the rationale behind the Schmit case and conclude that the decision reached there correctly expresses the law and that the trial court in the instant case properly submitted the question of defendant's negligence to the jury.

■ The defendant contends that the trial court should have found Donna contributorily negligent as a matter of law rather than submitting the issue of her negligence to the jury. There are undoubtedly some situations in which a minor may be charged with negligence as a matter of law,[11] but, as a general rule, the question is one of fact to be determined by the jury.[12] Donna testified that she knew the flare was dangerous and "a bad thing to deal with." Notwithstanding such testimony, we do not feel that she, a child seven years of age, can be said, as a matter of law, to have comprehended or appreciated the *full* extent of the risk involved.[13] The trial court properly charged the jury that she was obligated to exercise only that degree of care commensurate with her age, intelligence, and experience. This is the well-settled law in this state,[14] and we think the question of whether Donna comprehended or should have comprehended the full extent of the danger was sufficiently doubtful to warrant its submission to the jury.

■ Defendant argues that prejudicial error was committed when the trial court instructed the jury that "reasonable care calls for

[11]*E.g.*, see, Steinke v. Indianhead Truck Line, Inc. 237 Minn. 253, 54 N. W. (2d) 777; Nolley v. Chicago, M. St. P. & P. R. Co. (8 Cir.) 183 F. (2d) 566, certiorari denied, 340 U. S. 913, 71 S. Ct. 284, 95 L. ed. 660.

[12]Deach v. St. Paul City Ry. Co. 215 Minn. 171, 9 N. W. (2d) 735; Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; see, Thomsen v. Reibel, 212 Minn. 83, 85, 2 N. W. (2d) 567, 568; Annotations, 107 A. L. R. 4 and 174 A. L. R. 1080.

[13]See, Restatement, Torts, § 339, *comment e.*

[14]See, Watts v. Erickson, 244 Minn. 264, 69 N. W. (2d) 626; 13 Dunnell, Dig. (3 ed.) § 7029.

a higher degree of care towards children than towards ordinary adults." Plaintiffs submit that since children are not held to the same standard of care as adults the instruction is correct. The instruction, however, does not deal with the standard of care required to be exercised *by* children but rather the care required of an adult *towards* children. The standard of conduct in the latter case is simply that which might be expected of an ordinarily prudent person under similar circumstances.[15] Thus, while reasonable care commands a greater amount of vigilance toward children than ordinary adults,[16] the standard of care is the same in both instances. Since the phrase "degree of care" is sometimes used synonymously with "standard of care," it would be preferable to avoid the use of the former when referring to the amount of vigilance that constitutes ordinary or reasonable care in a particular situation. However, it is clear from reading the entire instruction that the trial court used the phrase "degree of care" in its ordinary sense as meaning a greater amount of vigilance and not a higher standard of care than might be expected from a reasonably prudent person. This court has frequently used the phrase in the same sense,[17] and, while perhaps not technically precise, there is ordinarily little danger of a lay juror being misled or confused.[18] In any event, this being a mere verbal error, the defendant failed to make timely objection as required by Rule 51 of the Rules of Civil Procedure.[19]

■ Colored photographs of Donna taken three months after the accident were admitted in evidence over objection. Defendant claims that because these photographs were merely cumulative and manifestly calculated to excite sympathy they should not have been

[15]See, Prosser, Torts, § 38, p. 257.

[16]Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1.

[17]See, *e.g.*, cases cited in 13 Dunnell, Dig. (3 ed.) § 6980, note 25.

[18]But cf. Sewart v. Minneapolis St. Ry. Co. 222 Minn. 454, 459, 25 N. W. (2d) 221, 224, to the effect that the use of the phrase "less care" might be misunderstood as requiring a lower standard of care.

[19]See, 2 Youngquist & Blacik, Minnesota Rules Practice, Rule 51; Mason's Dunnell, Minn. Pract. §§ 1543, 1544.

received. It is well settled that in personal injury actions photographs are admissible to show the existence and nature of injuries providing they are relevant and accurately portray the injuries at the time they were taken.[20] The photographs here were clearly relevant in showing Donna's condition as bearing upon the extent of her pain and suffering, and the fact that they were taken three months after the accident does not, of itself, render them inadmissible.[21] Nor are they necessarily inadmissible because they are of a gruesome nature.[22] Here the attending physician testified that the photographs were a true representation of Donna's condition on the date taken, and there is no evidence tending to show otherwise. Moreover, the record discloses that at the pre-trial conference the defendants stipulated that the questioned photographs "show the condition of Donna Knox at the time the photos were taken." The admissibility of the photographs rested largely in the discretion of the trial court,[23] and we can find no abuse of that discretion. However, it should be noted that caution must be exercised in admitting colored photographs which may tend to exaggerate the seriousness and extent of wounds or burns. Where such photographs give false impressions of disability or of pain and suffering endured, the prejudicial effect might well outweigh their probative value. There is no indication that such a false impression was created in the instant case.

■ Several of the defendant's assignments of error deal with the failure of the trial court to give certain requested instructions. In Cameron v. Evans, 241 Minn. 200, 208, 62 N. W. (2d) 793, 798, we said:

"* * * The trial court is allowed considerable latitude in the language used, and a new trial will not be granted where requested instructions are refused when the general charge fairly and correctly states the applicable law. All that is required is that the charge as

[20]Moeller v. Hauser, 237 Minn. 368, 54 N. W. (2d) 639; 32 C. J. S., Evidence, § 711.

[21]See, Moeller v. Hauser, 237 Minn. 368, 54 N. W. (2d) 639.

[22]*E.g.*, see, Breeding's Dania Drug Co. v. Runyon, 147 Fla. 123, 2 So. (2d) 376; Godvig v. Lopez, 185 Ore. 301, 202 P. (2d) 935.

[23]7 Dunnell, Dig. (3 ed.) § 3260.

a whole convey to the jury a clear and correct understanding of the law." (Citations omitted.)[24]

For the most part, the instructions requested by the defendant here were in substance and effect included in the general charge of the court. The four tests enumerated in Restatement, Torts, § 339, were fully covered. The instructions given, considered as a whole, adequately and fairly laid down the law of the case, and we can find no prejudicial error in the court's refusal to give defendant's requested instructions.

■ Finally, the defendant contends that the verdict in the Donna Knox case, which was for $17,500, was excessive. Donna was in the hospital for 78 days, during most of which time she suffered intense pain. Because of the severity of the pain involved in changing dressings, she was placed under general anesthetic five times for this purpose. In addition, she underwent three operations for skin graft. During one of these operations, she went into shock and became seriously ill. The attending physician testified that on occasions Donna became hysterical when he entered her room because she was fearful that someone was going to change her dressings or touch her. At the time of trial Donna had made a "good recovery." Outside of the fact that the area "itches a little," there was no pain, and her body functions were normal. However, ridges and welts on her buttocks and thigh will remain for the rest of her life. Similarly, the grafted area will always be discolored, and normal skin excretion will not be possible. While the scars will not be noticeable when she is wearing a dress, plaintiff claims, and it can reasonably be inferred from the evidence, that her condition will be revealed whenever she wears shorts or swimming attire.

As noted by the trial court in its memorandum, the record is barren of any indication of passion or prejudice. While the verdict is liberal, we cannot say that it is so disproportionate that passion or prejudice can be implied from its size alone. Notwithstanding the absence of passion or prejudice, trial courts should not hesitate to take appropriate action where the evidence does not justify the

---

[24]See, also, 6 Dunnell, Dig. & Supp. § 9777.

amount of a verdict, providing, of course, that such is properly assigned as a ground in the motion for a new trial.[25] It is well settled in this state that where the damages are excessive a new trial may be granted under either (5) or (7) of Rule 59.01 of the Rules of Civil Procedure.[26] Unlike (5), which authorizes a new trial only where the damages appear to have been given under the influence of passion or prejudice, (7) permits a new trial whenever the damages are not justified by the evidence. The testimony regarding the extensive pain and suffering endured by Donna, her long hospitalization and convalescence, together with her permanent disfigurement justified a substantial verdict. Consequently, we do not feel warranted in holding that the trial court abused its discretion in refusing a new trial.

■ Other errors have been assigned and argued. An examination of the record reveals no evidence which would reasonably sustain a finding of negligence on the part of the plaintiff J. E. Knox, and consequently the court properly instructed the jury that, as a matter of law, he was not contributorily negligent. At the time of oral argument defendant moved to dismiss the Donna Knox case on the ground that under Rule 17.02 of the Rules of Civil Procedure a parent may not maintain an action for injuries to his child without first being appointed guardian *ad litem*.[27] It is clear that such a question cannot be raised for the first time on appeal,[28] and consequently we are unable to pass upon the merits of defendant's contention. We have carefully considered the other assignments and are of the opinion that they do not involve prejudicial error, nor are they sufficiently important to require discussion.

Affirmed.

---

[25]See, *e.g.*, Kemerer v. Mock, 198 Minn. 316, 269 N. W. 832.

[26]Formerly M. S. A. 1949, § 547.01(5, 7). In the leading case of Mohr v. Williams, 95 Minn. 261, 104 N. W. 12, 1 L.R.A.(N.S.) 439, the court, in construing the similar provisions of G. S. 1894, § 5398, attempted to point out under which section or both a movant should proceed in a particular situation. See, 14 Dunnell, Dig. (3 ed.) § 7132.

[27]See, 1 Youngquist & Blacik, Minnesota Rules Practice, p. 552; Wright, Minnesota Rules, pp. 112 to 113.

[28]See, 1 Youngquist & Blacik, Minnesota Rules Practice, Rule 12.08.